**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DESHEILA C. HOWLETT,

    Plaintiff,

  v.

CITY OF WARREN; LAWRENCE GARDNER; SHAWN JOHNSON; DAWN MCLANE; BARBARA BYER; MICHAEL SAUGER; ANWAR KHAN;

    Defendants.

**JURY DEMAND**

Leonard Mungo
The Mungo Law Firm, PLC
**Attorneys for Plaintiff**
333 W. Fort St.
Suite 1500
Detroit, MI 48226
(313) 963-0407/(313) 963-0200 (fax)
Mungol16@msn.com

**COMPLAINT AND JURY DEMAND**

Plaintiff DeSheila Howlett ("Plaintiff") through her attorneys, The Mungo Law Firm, PLC for her Complaint against Defendant City of Warren; Lawrence Gardner; Shawn Johnson; Dawn Mclane; Barbara Byer; Michael Sauger; Anwar Khan; Darrin Labin (collectively, "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, for unlawful employment practices and creating a hostile work environment on

1

the basis of race and/or gender, to provide appropriate relief to Plaintiff, an employee of Defendants who was adversely affected by such practices. Plaintiff alleges that Defendants subjected her to a hostile work environment that altered terms and conditions of her employment because of her race and/or gender. Plaintiff further alleges that these actions deprived him of certain civil rights to which he was entitled, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f)(1), 42 U.S.C. § 1981a, and 42 U.S.C. § 1988.

3. Venue is proper in this Court because the discrimination and retaliation practices hereafter alleged to be unlawful were committed within the jurisdiction of this District.

## PARTIES

4. Plaintiff is African-American female. Plaintiff began her employment with the City of Warren on August 10, 2006 as a police officer.

5. Plaintiff was the first African American police officer to ever be employed in history of the City of Warren. Plaintiff has been continuously employed by the City of Warren for 10 years.

6. At all times relevant, each Defendant has been an "employer" of Plaintiff within the meaning of Title VII, 42 U.S.C. § 2000e(b).

7. At all times relevant, Plaintiff has been an "employee" of Defendants within the meaning of Title VII, 42 U.S.C. § 2000e(f).

## FACTS COMMON TO ALL COUNTS

8. Since Plaintiff's employment began as the first African American police Officer in the City, Plaintiff has been constantly peppered with inappropriate, insulting, demeaning, racially stereotypical, offensive comments, jokes, statements, conversations, and other conduct by her similarly-situated White police officers including, but not limited to, supervisors.

9. The City of Warren has a notorious history of racially discriminatory practices against African Americans. That such custom, policy, and practice has been publicly demonstrated through racially disparaging and insulting comments made reportedly by the current mayor of the City of Warren. The custom and policy of racially discriminatory practices by the City of Warren, particularly in its police department, has also been demonstrated by the following series of events perpetrated against Plaintiff:

   a) Defendant Anwar Khan (a Pakistani male), at the time Plaintiff's Field Training Officer, disparaged, insulted, and demeaned Plaintiff based on her gender by telling her that woman have no right to work and especially not to be police officer, and failing her forcing her to repeat;

   b) Defendants Anwar Khan (a Pakistani male) and Darrin Labin (White male) approached another white police officer that was friends with Plaintiff inquiring whether he had had sexual relations with Plaintiff, and whether he had a threesome with Plaintiff an another female.

3

c) William Ross (White male), at the time Plaintiff's field training officer, told Plaintiff that she was going to pass regardless of her performance because she is black. Later, Ross approached Plaintiff after her first, second, and up to her fifth year with the City of Warren telling her that was going to sue.

d) Kevin Barnhill (White male) always spoke to Plaintiff in a derogatory, stereotypical fashion using a "slave voice" and saying things like "Sister gurl?" and "Whattup doe?" mimicking stereotypical and demeaning portrayals of African Americans.

e) Paul Kelly (White male) and Dale Malesh (White male) would continuously approach Plaintiff to ask her to go on dates with extreme sexual overtones;

f) Roland Bell (White male) asked Plaintiff why she was walking gingerly after having a fibroid removed, and when Plaintiff told her the reason he told her "No, it's because of all that big black dick in you."

g) Sean Johnston (White male), a Sergeant at the time, allowed male and white officers to come into his office to use one of only two color copiers and instructed Plaintiff to go somewhere else to make her copies.

h) Arthur Gill (White male), former Sergeant, removed Plaintiff from her day-shift in favor of a similarly-situated white female officer, despite the white female officer not having the seniority over Plaintiff to fill that position.

i) Defendant Anwar Khan (a Pakistani male) pulled Plaintiff, at that time a Detective Sergeant of higher rank than Khan, over while she was en route to a crime scene and then made a false complaint against Plaintiff demanding that she be reprimanded for "driving recklessly". The complaint was not sustained

because Plaintiff was not driving in a reckless fashion, but was continuously subjected to racially and sexually discriminatory practices fostered by the City of Warren Police Department.

j) Plaintiff was deprived of her right to enjoy the benefits and privileges of her employment contract that her similarly-situated white officers enjoyed by being denied the opportunity to work light-duty after incurring injuries sustained in an accident.

k) Plaintiff, an African American female, was repeatedly not supported with proper backup and in a timely fashion because of her race and/or gender. The unlawful racially and gender biased customs and practices of the City of Warren Police Department endangered Plaintiff's life and safety during her employment.

l) Plaintiff was repeatedly subjected to commentaries, statements, and instructions from her similarly-situated white coworkers that Plaintiff needed to extend herself so that her similarly-situated white coworkers would accept her as an African-American female police officer.

m) Plaintiff was repeatedly demeaned and disparaged by her similarly-situated white coworkers by suggesting to her white partner if he was concerned that his life would be in danger because he had an African-American police officer as a partner due to the City of Warren Police Department's practice of not providing backup to Plaintiff, the sole African American police officer.

n) Plaintiff was isolated, disparaged, and slandered in her professional reputation concerning her ability to perform her duties by her similarly-situated white

      officers attempting to undermine her relationship with her white partners.

o) Plaintiff was continuously harrased by a white male police officer, Detective Shawn Johnson, through the following acts by him:

    i) Det. Johnson sniffed Plaintiff in a sexually suggestive manner and rubbing his hands through her hair, and suggesting to Plaintiff, no uncertain terms, that he was the white slave master and her his slave mistress subject to his sexual whims and desires.

    ii) Subjecting Plaintiff to racial and gender discriminatory and disparaging comments such as "They're just going to make you a slave around her."

    iii) Comparing Plaintiff to the gorilla on the label of Gorilla Glue.

    iv) Continuously subjecting Plaintiff to racially discriminatory comments characterizing her style of dress as a "Black thang" while mocking a stereotypical African American accent, inquiring "Why do you all name your kids ghetto names like Honey Brown and Destiny" and physically spelling out Destiny as D-E-E-S-T-I-N-E-E, and "Why do black people move to Atlanta, is it because you don't like living around white people?"

    v) Making racially demeaning and derogatory comments about the foods that Plaintiff would bring for lunch as characteristic of stereotypical African American meals or food preferences.

    vi) Continuously insinuating that Plaintiff took or stole things off of his desk.

    p) The City of Warren administration acknowledged to Plaintiff that racially and gender discriminatory employment practices are institutional at the City of Warren and the City of Warren Police Department.

    q) Plaintiff's work performance and whereabouts were scrutinized more than her similarly-situated white police officers (coworkers).

    r) Plaintiff was subjected to frequent racially discriminatory comments about her hair as an African American.

    s) Sgt. Paul Houtos asked Plaintiff "What is up with this blue-black thing and is it similar to redbone?"

10. The above describes the typical day-day racial and gender discriminatory environment that Plaintiff was subjected to during her ten years of employment with the City of Warren Police Department.

11. Over this ten year period, Plaintiff repeatedly brought this racial and gender discriminatory environment to the attention of the management of the City of Warren Police Department.

12. Notwithstanding their knowledge of this racial and gender discriminatory environment that Plaintiff was subjected to, Defendants did not take any action to address Plaintiff's complaints.

13. Defendants only initiative was physically separating Plaintiff from Sgt. Shawn Johnson, by placing him in a different physical location, only to place him back in her same physical office area after several months, allowing the racial and gender demeaning and degrading conduct of Sgt. Johnson to continue.

14. Defendants were clearly aware that Plaintiff was subjected to work conditions and a

work environment that violated her civil rights and failed/refused to make any corrections.

## COUNT I
### Violation of Title VII – Discrimination Based on Race and Gender

15. Plaintiff realleges and incorporates by reference Paragraphs 1 through 56 as Paragraph 57 of this Count I.

16. At all times relevant, there was in effect a federal statute, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, which provides:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a).

17. Defendants were aware, or should have been aware, of Title VII and that it is illegal to treat an employee differently and/or terminate an employee's employment because of the employee's race and gender.

18. During Plaintiff's employment with Defendants, he was subjected to acts of racial and gender discrimination by Defendants' employees, supervisors, and board members.

19. This illegal race and gender discrimination created a hostile and abusive work environment for Plaintiff.

20. Defendants' actions as set forth above were willful, intentional and/or made in reckless disregard of Plaintiff's rights.

21. Defendants' conduct as described above constitutes a willful violation of Title VII.