# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DESHEILA C. HOWLETT,

      Plaintiff,

v

CITY OF WARREN; COMMISSIONER JERE
GREEN, acting in his individual capacity;
LT. LAWRENCE GARNER; SHAWN
JOHNSON; DAWN McLEAN;  ANWAR KHAN;
DARRIN LABAN; WILLIAM ROSS; KEVIN
BARNHILL; PAUL HOUTOS; SCOTT TAYLOR,

      Defendants.

Case No. 17-11260
Hon. Terrence G. Berg
Mag. R. Steven Whalen

---

THE MUNGO LAW FIRM, PLC
By:  LEONARD MUNGO  (P43562)
333 W. Fort Street, Suite 1500
Detroit, MI  48226
(313) 963-0407 / FAX (313) 963-0200
caseaction@mungoatlaw.com
Attorneys for Plaintiff

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.
By:  **RONALD G. ACHO**  (P23913)
    **ELIZABETH RAE-O'DONNELL**  (P41529)
    **JAMES R. ACHO**  (P62175)
17436 College Parkway
Livonia, MI  48152
(734) 261-2400 / FAX (734) 261-2400
racho@cmda-law.com
erae@cmda-law.com
jacho@cmda-law.com
Attorneys for **Defendants**

ETHAN VINSON  (P26608)
City of Warren, City Attorney
1 City Square, Suite 400
Warren, MI  48093-5390
(586) 574-4671 / FAX (586) 574-4530
evinson@cityofwarren.org
Co-Counsel for Defendants

---

## MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS, CITY OF WARREN, GREEN, GARNER, JOHNSON, McLEAN, KHAN, LABAN, ROSS, <u>BARNHILL, HOUTOS AND TAYLOR</u>

**NOW COME** the Defendants, City of Warren, Commissioner Jere Green, Lt.

Lawrence Garner, Shawn Johnson, Dawn McLean, Anwar Khan, Darrin Laban,

William Ross, Kevin Barnhill, Paul Houtos and Scott Taylor (collectively "Defendants"), by and through their attorneys, **CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**, and for their Motion for Summary Judgment, Defendants rely upon Rule 56 of the Federal Rules of Civil Procedure, and further state as follows:

1.      Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2.      After adequate time for discovery and upon motion, Fed. R. Civ. P. 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

3.      The movant has the initial burden of showing "the absence of a genuine issue of material fact" and the "non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita-Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

4.      This case has had numerous depositions - 33, voluminous documents - over 1,000,000 pages, and multiple motions. But despite the volume of the case, it should be dismissed because there is no material issue of fact.

5.     Despite the limitation on pages, Defendants have produced sufficient facts that are undisputed that show that Plaintiff has not established any of her claims against the Defendants, and Defendants are entitled to judgment as a matter of law.

6.     Pursuant to Local Rule 7.1(a), defense counsel sought concurrence from Plaintiff's counsel for Defendants' Motion for Summary Judgment, and Plaintiff's counsel did not concur.

7.     Based upon the attached Brief, Exhibits, and Affidavits, Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint with prejudice.

**WHEREFORE,** Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

By:     /s/ Ronald G. Acho
        **RONALD G. ACHO**  (P23913)
        **ELIZABETH RAE-O' DONNELL**  (P41529)
        **JAMES R. ACHO**  (P62175)
        17436 College Parkway
        Livonia, MI  48152
        (734) 261-2400 / FAX (734) 261-4510
        racho@cmda-law.com
Dated: September 20, 2018     erae@cmda-law.com
        jacho@cmda-law.com
        Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DESHEILA C. HOWLETT,

      Plaintiff,                   Case No. 17-11260

v                               Hon. Terrence G. Berg

                               Mag. R. Steven Whalen

CITY OF WARREN; COMMISSIONER JERE
GREEN, acting in his individual capacity;
LT. LAWRENCE GARNER; SHAWN
JOHNSON; DAWN McLEAN;  ANWAR KHAN;
DARRIN LABAN; WILLIAM ROSS; KEVIN
BARNHILL; PAUL HOUTOS; SCOTT TAYLOR,

      Defendants.

---

THE MUNGO LAW FIRM, PLC
By:   LEONARD MUNGO  (P43562)
333 W. Fort Street, Suite 1500
Detroit, MI  48226
(313) 963-0407 / FAX (313) 963-0200
caseaction@mungoatlaw.com
Attorneys for Plaintiff

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.
By:  **RONALD G. ACHO**  (P23913)
    **ELIZABETH RAE-O'DONNELL**  (P41529)
    **JAMES R. ACHO**  (P62175)
17436 College Parkway
Livonia, MI  48152
(734) 261-2400 / FAX (734) 261-2400
racho@cmda-law.com
erae@cmda-law.com
jacho@cmda-law.com
Attorneys for **Defendants**

ETHAN VINSON  (P26608)
City of Warren, City Attorney
1 City Square, Suite 400
Warren, MI  48093-5390
(586) 574-4671 / FAX (586) 574-4530
evinson@cityofwarren.org
Co-Counsel for Defendants

---

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS, CITY OF WARREN, GREEN, GARNER, JOHNSON, McLEAN, KHAN, LABAN, ROSS, <u>BARNHILL, HOUTOS AND TAYLOR</u>

**<u>TABLE OF CONTENTS</u>**

<u>PAGE</u>

INDEX OF AUTHORITIES..............................................................................iii-v

STATEMENT OF QUESTIONS PRESENTED ......................................................vi-vii

INTRODUCTION...........................................................................................1

STATEMENT OF UNDISPUTED FACTS ..................................................................1

ARGUMENTS..............................................................................................11

I.   THE PLAINTIFF'S TITLE VII AND 42 U.S.C. §1983 CLAIMS
     PRECEDING APRIL 21, 2013 ARE UNTIMELY AS A MATTER
     OF LAW..........................................................................................11

II.  THE PLAINTIFF HAS FAILED TO ESTABLISH CLAIMS OF
     SEX AND RACE DISCRIMINATION/HARASSMENT IN
     VIOLATION OF TITLE VII AND 42 U.S.C. §1983 ............................................13

     A.   THE CITY OF WARREN IS ENTITLED TO SUMMARY
          JUDGMENT ON PLAINTIFF'S CLAIMS OF SEX
          HARASSMENT UNDER TITLE VII AND §1983....................................13

     B.   PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA
          FACIE CASE OF SEX DISCRIMINATION UNDER
          TITLE VII AND §1983..................................................................16

     C.   THE CITY OF WARREN IS ENTITLED TO SUMMARY
          JUDGMENT ON THE PLAINTIFF'S CLAIMS OF RACE
          HARASSMENT UNDER TITLE VII AND §1983....................................18

     D.   PLAINTIFF HAS FAILED TO PRESENT A PRIMA FACIE
          CASE OF RACE DISCRIMINATION UNDER TITLE VII
          AND §1983................................................................................20

III. THE PLAINTIFF HAS FAILED TO SET FORTH A PLAUSIBLE
     §1983 FOURTEENTH AMENDMENT SUBSTANTIVE DUE
     PROCESS CLAIM.................................................................................21

IV.   NO 42 U.S.C. §1983 *MONELL* LIABILITY EXISTS AGAINST
      THE CITY OF WARREN ......................................................................... 22

V.    PLAINTIFF'S COMPLAINTS AGAINST THE INDIVIDUAL
      DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES ARE
      BARRED BY QUALIFIED IMMUNITY ............................................. 24

      A.   (RETIRED) COMMISSIONER JERE GREEN IS ENTITLED
           TO QUALIFIED IMMUNITY ....................................................... 24

      B.   LT. GARNER IS ENTITLED TO QUALIFIED IMMUNITY ............... 25

      C.   DAWN McLEAN IS ENTITLED TO QUALIFIED IMMUNITY ........ 26

      D.   DEFENDANTS TAYLOR, ROSS, LABAN, HOUTOS,
           BARNHILL AND KHAN ARE ENTITLED TO
           QUALIFIED IMMUNITY ............................................................. 27

VI.   PLAINTIFF'S 42 U.S.C. §1981 CLAIMS IN COUNT VI FAIL AS A
      MATTER OF LAW AND MUST BE DISMISED ............................... 28

VII.  PLAINTIFF'S 42 U.S.C. §1985 CLAIMS IN COUNT V FAIL AS A
      MATTER OF LAW AND MUST BE DISMISSED ............................. 28

CERTIFICATE OF SERVICE

INDEX OF EXHIBITS

# INDEX OF AUTHORITIES

**PAGE**

**Cases**

*Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982)............... 23

*Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir. 2008)........................ 29

*Anderson v. Creighton*, 483 US 635 (1987) ................................................. 26

*Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) ............................... 20

*Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir.) cert. den., 139 L.Ed.2d 114 (1997).................................................................................. 15

*Block v. Meharry Medical College*, 723 Fed. Appx. 273 (6th Cir. 2018).................. 11

*Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) ........................ 17

*Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) .................... 14

*Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 707-708 (6th Cir. 2007) .............. 19

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)........................................ 29

*Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) ........................... 16

*Gutzweller v. Frank*, 860 F.2d 1317, 1325 (6th Cir. 1988)................................. 13

*Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) .................................... 19

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)........................................... 24

*Harris v. Forklift Systems, Inc.*, 570 U.S. 17, 23 (1993)............................... 15

*Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013) cert. denied, __ U.S. __, 134 S.Ct. 1023 (U.S. 2014) ...................................................... 12

*Howard v. Grinage,* 82 F.3d 1343, 1349-1350 (6th Cir. 1996) ................................... 22

***Jacklyn v. Schering-Plough Healthcare Prod.***, 176 F.3d 821, 930 (6th Cir. 1999)...................................................................... 17

***Leadbetter v. Gilley***, 385 F.3d 683, 691 (6th Cir. 2005) ................................. 21

***McCormick v. Miami University***, 693 F.3d 654, 659-660 (6th Cir. 2012) ................ 28

***Meritor Savs Bank, FSB v. Vinson***, 477 U.S. 57, 68 (1986)........................................ 14

***Mitchell v. Forstyh***, 472 U.S. 511, 526 (1985) ................................................ 24

***Monell v. Dept. of Social Services of City of New York***, 436 U.S. 658, 691 (1978)............................................................................... 24

***Noble v. Brinker Intern.***, 391 F.3d 715, 731 (6th Cir. 2004) ....................................... 18

***Pahssen v. Merrill County Sch. Dist.***, 668 F.3d 356, 368 (6th Cir. 2012).................. 29

***Powers v. Hamilton County Pub. Defender***, 501 F.3d 592, 607 (6th Cir. 2007)..... 23

***Saucier v. Katz***, 533 U.S. 194, 201; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) ............ 25

***Scott v. Clay County***, 205 F3d 867, 874 (6th Cir., 2000)................................................ 26

***Shah v. General Electric Co.***, 816 F.2d 264 (6th Cir. 1987) ......................................... 16

***Smart v. City of Miami Beach, Florida***, 933 F. Supp. 2d 136 (S.D. Fla. 2013) ....... 15

***Sterman v. Optical Imaging Systems, Inc.***, 843 F.Supp. 1168 (E.D. Mich. 1994)........................................................................................ 11

***Thornton v. Fed. Express Corp.***, 530 F.3d 451, 457 (6th Cir. 2008) ........................ 12

***Vakilian v. Shaw***, 335 F.3d 509, 518 (6th Cir. 2003)....................................................... 29

***Vereecke v. Huron Valley School Dist.***, 609 F.3d 392, 403 (6th Cir. 2010)............. 23

***Vermett v. Hough***, 627 F.Supp. 587, 607 (W.D. Mich. 1986)...................................... 16

***Waters v. Drake,*** 105 F.Supp.3d 780, 799-802 (S.D. Ohio E.D. 2015)...................... 22

***Whathen v. General Electric Co.***, 115 F.3d 400 (6th Cir. 1997).................................. 13

***Williams v. CSX Transp. Co.***, 643 F.3d 502, 512 (6th Cir. 2011) ............................... 19

***Wolfe v. Perry***, 412 F.3d 704, 714 (6th Cir. 2005).......................................................... 12

## Statutes

42 U.S.C. §1981.......................................................................................................... 28

42 U.S.C. §1983......................................................................................................11, 23

42 U.S.C. §1985.......................................................................................................... 28

42 U.S.C. §1985(3) ..................................................................................................... 29

42 U.S.C. §2000e, *et. seq.*.......................................................................................... 11

42 U.S.C. §2000e-(5)(e)(1) ........................................................................................ 11

## Rules

F.R.E. 801(d)(2)(D) ...................................................................................................... 4

F.R.E. 805...................................................................................................................... 4

## STATEMENT OF QUESTIONS PRESENTED

I.    **WHETHER THE PLAINTIFF'S TITLE VII AND 42 U.S.C. §1983 CLAIMS PRECEDING APRIL 21, 2013 ARE UNTIMELY AS A MATTER OF LAW?**

Defendants say "Yes"
Plaintiff says "No"

II.    **WHETHER THE PLAINTIFF HAS FAILED TO ESTABLISH CLAIMS OF SEX AND RACE DISCRIMINATION/HARASSMENT IN VIOLATION OF TITLE VII AND 42 U.S.C. §1983?**

Defendants say "Yes"
Plaintiff says "No"

III.    **WHETHER THE PLAINTIFF HAS FAILED TO SET FORTH A PLAUSIBLE §1983 FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM?**

Defendants say "Yes"
Plaintiff says "No"

IV.    **WHETHER 42 U.S.C. §1983 *MONELL* LIABILITY EXISTS AGAINST THE CITY OF WARREN?**

Defendants say "Yes"
Plaintiff says "No"

V.    **WHETHER PLAINTIFF'S COMPLAINTS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES ARE BARRED BY QUALIFIED IMMUNITY?**

Defendants say "Yes"
Plaintiff says "No"

**VI.** **WHETHER PLAINTIFF'S 42 U.S.C. §1981 CLAIMS IN COUNT VI FAIL AS A MATTER OF LAW AND MUST BE DISMISED?**

Defendants say "Yes"
Plaintiff says "No"


**VII.** **WHETHER THE PLAINTIFF'S 42 U.S.C. §1985 CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW?**

Defendants say "Yes"
Plaintiff says "No"

## INTRODUCTION

Plaintiff had a successful career with the Warren Police Department ("WPD"). She chose to end it abruptly and without a good reason. She repeatedly ignored the requirements of her job to report any claims of race discrimination or sex discrimination or sexual harassment on a timely basis. (Ex.1: Pl. pp. 66-67; Ex. 27; Ex. 28; Ex. 29; Ex. 30; Ex. 39). Despite these requirements, many months, and sometimes years after the fact, she makes new (and de minimis) allegations against various co-workers. Yet, virtually all of these co-workers were friends of Plaintiff and had treated her with dignity and respect. Now, these ten individual have been put through an unnecessary ordeal for no good reason, and it is unfair and unjust. Despite lengthy discovery, there is no genuine issue of material fact. This case should be dismissed in its entirety and Defendants should be awarded their costs and attorney fees.

## STATEMENT OF UNDISPUTED FACTS

1. **Plaintiff had upwards of 250,000 interactions, or more, with co-workers. Her claim that a mere handful were harassing in nature over 11 years certainly does not rise to a violation of Plaintiff's constitutional rights.** (Ex. 4: Bradley Affidavit ¶s 5-7).

2. **The evidence established that Plaintiff failed and refused to follow the Policies and General Orders of the WPD to present any and all race and sex discrimination complaints. Further, for her near 11 year career, she only brought 2 complaints to the attention of the WPD,** (Ex. 1: Pl. p. 76, 231), **which were promptly and appropriately addressed. She admitted it was her duty and obligation to report any and all complaints concerning race and/or sex discrimination and harassment to WPD management or HR**. (Ex. 1: Pl. pp. 66-67). **She offers <u>no</u> explanation of her refusal to follow these mandates.** (Mandates and orders attached hereto as Ex. 27; Ex. 28; Ex. 29; Ex. 30; Ex. 39).

3.  ***Plaintiff could not deny she made a material misrepresentation to the Court when she alleged in her lawsuit that she repeatedly brought her complaints to the City's attention. She admits that her allegation was false***. The only complaints she made in her 11 years were about a dispatcher and clerk. (Ex. 5: McLean pp. 21, 23-24; Ex. 1: Pl. p. 76). She even admitted to her own lawyer that she did not bring complaints to management's attention. Plaintiff: "*I didn't complain*." Q. "*You didn't complain?*" Plaintiff: "*No.*" (Ex. 1: Pl. p. 253).

4.  Besides Plaintiff's material misrepresentation in her lawsuit, she also misrepresented the truth about her personal auto accident that occurred in 2011. She testified under oath that she never made a claim for any emotional damages. (Ex. 1: Pl. pp. 10-12). However, in that lawsuit, she did, in fact, make a claim for damages for humiliation and embarrassment. (Ex. 2: Macomb County Complaint, ¶ 11).

5.  Plaintiff and Deputy Commissioner Nichols both acknowledged that they were each other's friends and confidants for over 10 years (Ex. 6: Nichols p. 36-37, 146; Ex. 1: Pl. p. 89, 137). Plaintiff did not tell Nichols *any* of her complaints which she now contends occurred during her employment, until she had a meeting in February 2017 with Mark Simlar (Acting HR Director). (Ex. 1: Pl. pp. 200, 245).

6.  Plaintiff resides in Georgia. She stopped working for the City of Warren on February 2, 2017.  (Ex. 1: Pl. pp. 199-201).

7.  On April 4, 2017, the EEOC issued a "Right to Sue" letter, making no judgment as to whether Plaintiff's claims had merit.  (Ex. 7). On April 21, 2017, she filed her Complaint, and on April 26, 2017, she filed a First Amended Complaint.  (Docs. 1, 2, and 4).

8.  She alleges race and sex discrimination (denied in total by the Defendants) based upon disparate treatment whereby she seeks to establish intentional discrimination. She has *not pled* a disparate impact discriminatory hiring practice case where the burden of proof would require an inference that the WPD's hiring selection process resulted in the rejection of a disproportionate number of members of a protected group to which she belongs. ***Teamsters v. United States***, 431 U.S. 324 (1977).  (Doc. 4, ¶s 23-30).

9.  ***Plaintiff was satisfied in the WPD***. She told many WPD members that she was proud of the fact that she was the only African American police officer for the

WPD. Likewise, her co-workers said they were proud to have her as a member of the force. (Ex. 1: Pl. pp. 52, 138). (The WPD now has 4 African American officers.)

10. She had a successful career trajectory in the WPD, and she was given equal opportunity to train, compete and advance. Although true that advancement to Corporal is dependent on signing up for the test, it is also true that she was promoted more quickly to the position than 19 other white male officers and 1 female white officer who had more years of service with the WPD. (Ex. 8: Reichling Affidavit ¶ 5-6).

11. **_Defendant Jere Green_**. Plaintiff's only complaint about him was that he oversaw the WPD, which she believed discriminated. **_Undisputed defense_**. Green did everything within his power to assist Plaintiff in her career. (Ex. 9: Green p. 169). When Plaintiff had care of a newborn, he worked with her to reduce her 12 hour shift to 8 hours so that she could care for the child. (Ex. 1: Pl. p. 187; Ex. 9: Green p. 187). She agreed that this was a magnanimous action on his part. (Ex. 1: Pl. pp. 182-183).

12. Green, as Plaintiff's supervisor, never took any negative employment action against her during her career, and only wanted her to succeed. He emphasized that in his 38 years with the WPD, he never experienced WPD employees with a racist attitude, other than the complaints involving Johnson and Beyer, which were investigated and addressed. (Ex. 9: Green pp. 55, 118). Supervisors have a duty to bring incidents of racial and sexual discrimination to his attention, and no supervisor has been disciplined for failing to investigate under his administration. (Ex. 9: Green p. 68). Green immediately disciplined Johnson and Beyer (Ex. 10; Ex. 11). Plaintiff never brought any complaints to Green's attention. (Ex. 1: Pl. p. 76; Ex. 9: Green pp. 187-188). Even though Plaintiff did not wish to file a complaint against Beyer, Beyer was appropriately disciplined. (Ex. 11: Beyer discipline).

13. **_Defendant Khan_**. Plaintiff is suing Khan for sex discrimination (Ex. 1: Pl. pp. 84, 96), due to her subjective belief that he failed only female officers in the FTO program. _Id._, at p. 88. But, she admitted to deficiencies in her job performance, including incorrectly drawing crash diagrams; completely failing to process an operating while intoxicated report with key pieces of evidence for the prosecution; difficulty working the LEIN system and WPD mapping system, as well as learning the orientation and geography of the City. (_Id._, at pp. 82-87) She endangered both her life and Khan by not properly responding to a man brandishing his weapon (Ex. 12: Khan p. 118). She also contends that it was gender discrimination for

Khan to say that America was better off before women started working in the 1940s and to ask her if she was engaged in a relationship with Nichols. (Ex. 1: Pl. pp. 71, 99).[1] ***Undisputed defense.*** Contrary to her "belief", Khan also failed James Twardesky and Frank Huron, both white males, at approximately the same time he recommended that Plaintiff be recycled at Step III of the FTO program. (Ex. 13: Twardesky p. 51). She never complained to anyone about Khan's alleged discrimination until she filed this lawsuit, years later. (Ex. 1: Pl. p. 76).

14. **NOTE**: Plaintiff claims she is upset about discrimination because she is African American. Yet, in the lawsuit for her personal auto accident, she explained how she selected her doctor, and showed her own prejudice: " . . . I basically looked for an ***American*** name." (Ex. 3: Pl. (auto) dep. p. 12). (Emphasis supplied.)

15. **Disturbingly, Plaintiff, who found names offensive, does not deny she called Khan, who is Arab American, a "sand nigger".** (Ex. 1: Pl. pp. 91, 111-112) Her partner, Derek Scott, said that she used the term "sand nigger", and he told her the term was inappropriate. (Ex. 14: Scott pp. 18, 34).

16. ***Defendant Darrin Laban***. Plaintiff admits that Laban did not engage in any discrimination or harassment of her. Her only claim is that Laban asked Nichols if he was in a sexual relationship with Plaintiff. (Ex. 1: Pl. p. 99). ***Undisputed defense***. She never complained to anyone about his question about her and Nichols.[2]

17. ***Defendant Scott Taylor***. Plaintiff's one allegation is that 11 years ago he simply joked with her about African Americans complaining about her. (Ex. 1: Pl. p. 53). ***Undisputed defense.*** Despite her allegation, Plaintiff admits he did not *state* kkk (Ex. 1: Pl. pp. 54-55; Ex. 15: Taylor p. 32-35). In fact, she admits she had a joking and friendly relationship with Taylor. (Ex. 1: Pl. p. 53). She admitted she trusted him and sometime later she asked him to come to her home to do a personal favor for her. (Ex. 1: Pl. pp. 57-58, 127; Ex. 15: Taylor pp. 36-37).

---

[1] This alleged double hearsay statement, as a matter of law, is hearsay evidence not admissible under any hearsay exception.  F.R.E. 801(d)(2)(D); F.R.E. 805.

[2] These multiple levels of hearsay statements fall outside of the coverage of F.R.E. 801(d)(2)(D). Further, the statements do not conform to any exceptions of the hearsay rule and cannot be considered by the court. F.R.E. 805.

18. ***Defendant William Ross***. Plaintiff's sole claim is that 11 years ago, he opined that she would pass Phase One of the FTO program and that she would probably sue the WPD. (Ex.1: Pl. pp. 60-64; Doc. 4, ¶13c). ***Undisputed defense.*** Ross denies that he ever made such statements to her (Ex. 16: Ross p. 9); Incredibly, Plaintiff admitted that she had a good relationship with Ross; that he treated her like any other officer and that she had no reason to complain about him. (*Id.*, at pp. 63-64). She also conceded he was not coming from a bad place, and she did not think that he was trying to demean her. (*Id.*, at p. 62).

19. ***Defendant Kevin Barnhill***. Plaintiff's said that he stated "sister girl" and "whatsup doc" ten years ago. (Ex. 1: Pl. p. 112; Ex. 17: Barnhill p. 11-12). ***Undisputed defense.*** She felt comfortable enough with Barnhill to ask him to stop making comments, and when she told Barnhill to stop with joking comments, he did. (Ex. 1: Pl. pp. 117-118). She never complained to anyone about Barnhill, (*Id.*, at pp. 117-118), Plaintiff felt comfortable enough with Barnhill, that sometime later, she hired him to paint her condominium. (Ex. 17: Barnhill p. 47-49; Ex. 1: Pl. p. 257), but they had a falling out about the negotiated price. (Ex. 1: Pl. p. 252; Ex. 17: Barnhill p. 48-49).

20. ***Defendant Paul Houtos***. Her only claim is that he asked her, and the rest of the unit, about a term a witness used: "What is up with this blue-black thing and is it similar to redbone?" (Doc. 4, ¶13(q); Ex. 1: Pl. p. 154) ***Undisputed defense.*** She admitted Houtos was only seeking her assistance as to what this term meant. (Ex. 38: Houtos pp. 27-29; Ex. 1: Pl. p. p. 150). She was annoyed with the question (*Id.*, at p. 152) because that she did not want to be asked everything about race - ever - not because of any discrimination. She admitted that he gave her helpful tips when she was studying for the Corporal exam, and he even complimented her when she did well. (*Id.*, at p. 154; Ex. 38: Houtos pp. 45-46).

21. ***Defendant Dawn McLean***. Plaintiff named Dispatcher McLean because Plaintiff made an internal "hostile environment" complaint about her (Plaintiff's first complaint to Human Resources in 2013, Ex. 1: Pl. p. 76, 183; Ex. 18: complaint). (Doc. 4). Plaintiff filed the internal complaint after being sent on a run without a description of the suspect. (Ex. 1: Pl. p. 77). ***Undisputed defense.*** The complaint was unfounded (Ex. 5: McLean pp. 24, 25, 27), because there was no description of the suspect to give, because his face was obscured. (*Id.,* at p. 19). Plaintiff had *no reason to believe* that McLean failed to describe the subject due to illegal considerations of race or sex, and she simply had a personality conflict with another employee about this particular run. (Ex. 1: Pl. p. 78). She never complained to McLean or the WPD that she was not properly backed up on police runs by any dispatcher or officer. (Ex. 5: McLean p. 33; Ex. 1: Pl. p. 134).

22. **_Defendants Khan, Taylor, Ross, Barnhill, Houtos, McLean, Garner, Kelly, Bell, and Malesh._** Plaintiff *never* complained to anyone about Defendants' allegedly discriminatory comments until she filed this lawsuit. (Ex. 1: Pl. p. 76) and she did not file her complaint within 300 days of the alleged unlawful employment practice. She presented no evidence that her constitutional rights were violated because of her minority status. (Doc. 4, Count V)

23. **_Defendant Shawn Johnson_**. The bulk of Plaintiff's Complaint concerns the actions of co-worker Johnson (Doc. 4 ¶13(o)), an individual the WPD swiftly and appropriately disciplined in 2015 WPD learned about it. (Ex. 19: Johnson p. 130-131). She advised her Supervisor, that she did not wish to file a complaint against Johnson (Ex. 1: Pl. p. 192). She told McLean, Johnson's girlfriend, that she did not want to file a complaint against Johnson because they were "buddies", and instead, she wanted to take him out for drinks. (Ex. 5: McLean p. 58). Plaintiff told Officer Jodi Walny, a female co-worker, that she was upset that she had to detail a complaint against Johnson, and that she was directed to write something. (Ex. 20: Walny p. 27). The WPD, despite her protests, forged ahead with an investigation, separated the parties, and appropriately disciplined Johnson. (Ex. 10: Johnson discipline). Johnson's discipline was effective, and it immediately ended any further harassing acts by Johnson toward her. (Ex. 1: Pl. p. 224)

24. **_Defendant Lawrence Garner_**. Plaintiff contends that in late 2016, Lt. Garner was moved to a supervisory position over the CIU and requested that she move her desk into the Unit. (Doc. No. 4, ¶¶ 18, 19; Ex. 1: Pl. p. 211). **_Undisputed defense_**. Garner was neither Plaintiff's, nor Johnson's, supervisor when Johnson was disciplined. (Ex. 1: Pl. p. 194; Ex. 21: Garner p. 64; (Ex. 10: Johnson discipline). He moved to the Detective Bureau in November, 2016 (Ex. 21: Garner p. 57) about 19 months after the Johnson investigation and discipline. (Ex. 1: Pl. p. 194; Ex. 21: Garner p. 57). At the time, the Dispatch Center was undergoing a major renovation, limiting Bureau desk space. (Ex. 21: Garner p. 16). Garner discussed the move with Plaintiff because he wanted her to be comfortable with the proposed change. (*Id.*, at pp. 26, 41). He believed it was more productive for all detectives to work as a team in the same office, and that Plaintiff was missing out on key information and resources. (*Id.,* at pp. 102-104).

25. Plaintiff advised Garner that she had *no problem* with the move (Ex. 21: Garner pp. 26, 27, 32). He gave her the choice of open desks in criminal investigations. (Ex. 21: Garner pp. 28, 29; Ex. 1: Pl. pp. 210-211). Despite another option, she chose a desk that was closer to Johnson. (Ex. 21: Garner pp. 35-36, 108).

26. ***Non-Party Barbara Beyer***. Plaintiff and Beyer, a clerical worker in the WPD, were friends, and they would bring each other lunch, and sometimes go out (Ex. 1: Pl. p. 174; Ex. 22: Beyer p. 35). Plaintiff did not want to make a formal complaint against Beyer (Ex. 23: Mills pp. 38-39), but Lt. Mills advised Plaintiff that he was required to report the complaint to HR pursuant to General Order # 03-01. (Ex. 1: Pl. pp. 199-200).

27. ***Undisputed defense.*** Beyer acknowledged inappropriately using the "N" word (Ex. 22: Beyer p. 34) around Plaintiff after encountering an aggressive African American male at the records counter; Beyer stated she was scared because a man trying to register as a sex offender, yelled and called her a white, racist bigoted bitch (*Id.*, at pp. 17, 34, 35); she apologized and is remorseful (*Id.*, at pp. 43, 44); and she received a ten (10) day unpaid disciplinary suspension (*Id.*, at p. 53) for her language. Beyer further testified that she has never heard the "N" word used at the police station. (*Id.*, at p. 51). Plaintiff admits that Beyer's statement was not directed toward her. (Ex. 1: Pl. p. 175). On December 6, 2017, with Plaintiff's consent, this Court entered an Order dismissing Beyer as a Defendant with prejudice. (Doc. 21; Ex. 1: Pl. p. 175).

28. ***Intentional Race Discrimination***. Plaintiff alleged that under 42 U.S.C. §1983, she has been intentionally treated differently than her similarly situated white co-workers due to intentional and illegal race and gender determinations. (¶¶31-33, Count II, Doc. 4 and ¶¶13(g); 13(h); 13(j)). Plaintiff has presented nothing more than her own personal opinion and no objective evidence for this claim.

29. Plaintiff has never suffered any decrease in pay, alterations of job responsibilities or negative employment evaluations or negative reassignments constituting an adverse employment action. Her career was on an upwardly rising path as is evidenced by her successful promotion to Corporal more rapidly than 19 other white male officers and 11 female white officers. (¶10 herein; Ex. 8: Reichling Affidavit ¶5-6)

30. She alleges that following her off duty injury in 2011, she was deprived of light duty of working at the front desk that other white co-workers received. (Doc. 4, ¶13(j); Ex. 1: Pl. p. 103). ***Undisputed defense.*** She has no admissible evidence supporting this claim, and she admittedly never complained about this. (Ex. 1: Pl. p. 110).

31. There is no written policy regarding light duty assignments for years. The WPD practice, however, is to allow light duty work for officers who have sustained "on duty" work injuries, if work is available. Plaintiff's claim, without knowing who her

supervisors were at the time of her off duty accident, and without any evidence of whether light duty work was available, or who her co-worker's supervisors were, is a conclusory accusation without any supporting evidence. (Ex. 8: Reichling Affidavit ¶s 7-9).

32. Plaintiff alleges that Sgt. Sean Johnston treated her differently than white co-workers when he did not allow her to use a color copier in his office. (Doc. 4, ¶13g; Ex. 1: Pl. p. 157). **_Undisputed defense_**. However, she never complained to HR or her supervisor that she was treated differently. She did not know that Johnston could restrict officers from coming into his office, where the copier was located, because he had confidential information in his office. (Ex. 1: Pl. pp. 157-158).

33. **_Hostile Environment Sexual Harassment_**. Plaintiff complains for the _first time ever_ in her pleadings (Doc. 2 ¶s 3e, 3f; and Doc. 4 ¶s13e, 13f), admitting that she _never_ brought these allegations to anyone in management's attention (Ex. 1: Pl. pp. 180, 253) that co-employees (non-Defendants) Roland Bell, Paul Kelly and Dale Malesh sexually harassed her. These allegations occurred between 2006-2013, when she was a patrol officer. (_Id._, at pp. 159-161, 170).

34. She alleges Bell (co-jail worker) made an offensive comment to her after she had a medical procedure. **_Undisputed defense_**. But, she also admitted that she was close to him and believes he is a good guy, and that they joked frequently, and that he even brought diapers and formula to her house 5-7 times for her God-daughter. (Ex. 1: Pl. p. 177-178, 180). Bell, who denies her allegation, testified that they got along great, confiding in each other about their personal problems. (Ex. 24: Bell p. 11, 46, 49, 61, 65). Plaintiff has not shown that any alleged offensive comment from Bell was unwelcome.

35. Plaintiff alleges that Malesh, who has not worked for the WPD for over 6 years, and who she admittedly has not seen in years, would ask her to lunch. He was retired from the WPD and working for the schools when he asked her to lunch on school grounds. She admits that Malesh made no sexual references when he asked her, and she never complained to anyone that she was offended. (Ex. 1: Pl. pp. 160, 164, 166-167).

36. Plaintiff also alleged that Kelly asked her out when other employees were going out as a group. (Ex. 1: Pl. p. 162) She subjectively interpreted his request as sexual, because the request was in a "sly tone". _Id._ She never told anyone she was offended, nor did she file a complaint. (Ex. 1: Pl. p. 262-263).

37. ***Lack of back up due to illegal considerations of race and sex***. Plaintiff's most outrageous allegation is that Defendants repeatedly refused to support her with proper backup in a timely fashion due to her race and/or gender (Doc. 4, ¶¶13(k), 36, 37, 38, 39, 40, 41, 44(g)) and that this would be the highest "cardinal" sin among officers. (Ex. 1: Pl. p. 127)

38. Her complaint is completely devoid of any admissible evidence and is based solely upon her own subjective opinion. Plaintiff, who testified that she was complaining about patrolmen for this allegation, also testified that she values her life, and yet ***never*** made any type of complaint about her lack of backup and safety concerns. (Ex. 1: Pl. p. 133-134; 253).

39. When asked who would support her lack of backup allegation, she pointed to Derek Scott, retired dispatcher Debbie Broach, Detective Brent Chisolm (Ex. 1: Pl. pp. 128, 133, 130). All three witnesses *categorically denied* that she was put in danger and not adequately backed up on police runs. (Ex. 14: Scott p. 25; Ex. 37: Broach Affidavit ¶s 6-8; Ex. 26: Chisolm p. 30, 32).

40. Plaintiff's discovery demands, resulting in the production of more than one (1) million documents dealing with runs have failed to demonstrate her spurious allegations that she was not properly backed up and that her life was in danger.

41. Her claim that she was afraid to lodge a complaint make *no logical sense* given that she complained on two prior occasions. Even when she did not want to complain (Johnson discipline) and took no action herself to complain, the WPD forged ahead and promptly investigated, and then disciplined, one of her co-workers for inappropriate comments. (Ex. 1: Pl. pp. 76, 190-191; Ex. 5: McLean Dep. pp. 57-58; Ex. 25: Eidt pp. 71-72).

42. Plaintiff alleged that her 14th Amendment Due Process rights were violated by lack of necessary backup, and that the Defendants deliberately sought to undermine the "good will" of her partners, causing a danger and risk to her. (See Count III, First Amended Complaint, Doc. 4, ¶s 34-41).

43. Plaintiff admitted that no one told her, and she never heard, that Chisolm's life was in danger, merely because he partnered with her, or because he went on runs with her. (Ex. 1: Pl. p. 150). Chisolm's testimony undermines her claim and *no one*, including WPD officers, ever asked if he was worried about working with her. (Ex. 26: Chisolm p. 30, 32).

44. The WPD enacts and maintains its own General Orders and Rules of Conduct to govern the conduct of its police officers, which are separate and distinct from the policy and training undertaken by the City's administrative departments. (Ex. 9: Green pp. 42, 45) The General Orders and Rules of Conduct prohibit all forms of discrimination. (Ex. 27: 2014 Rules of Conduct Policy; Ex. 28: 2003 WPD Anti-Discrimination Policy; Ex. 29: 2003 WPD Rules of Conduct; Ex. 30: 2017 WPD Anti-Discrimination Policy; Ex. 39: 2017 Rules of Conduct Policy)

45. The City's elected offices (Mayor, Clerk, Treasurer) and City administrative employees (Human Resources) do not have any role in creating the WPD General Orders and Rules of Conduct.

46. The City and the City's WPD have been responsive, sensitive and active in promoting WPD rules, policies and training initiatives prohibiting all forms of discrimination and sexual harassment within the WPD. (Ex. 27; Ex. 28; Ex. 29; Ex. 30; Ex. 39).

47. All police officers hired by the WPD are required, as part of their initial training, to become familiar with the General Orders and Rules of the WPD prohibiting all forms of discrimination, including race and sex discrimination. Plaintiff, similar to all other officers in the department, received training and signed for the WPD's General Orders prohibiting Discrimination and Sexual Harassment and the WPD's Rules of Conduct mandating that all reports of discrimination and illegal conduct must be reported. (Ex. 1: Pl. pp. 65-68; Ex. 31: Pl. Training)

48. The WPD's General Orders prohibiting all forms of discrimination *mandate* that each employee is to report acts of harassment. (Ex. 28: 2003 WPD Anti-Discrimination Policy, Section IV B. Employee Responsibility)

49. The WPD also supplemented and enhanced their anti-discrimination mandates through cultural diversity education programs embedded within the 40 hour block training sessions. (Ex. 8: Reichling Aff. ¶ 11-12)

50. The WPD's General Orders prohibiting discrimination combined with the WPD's diversity training were in full force and effect and did what they were designed to do when Johnson and Beyer were disciplined for making inappropriate comments. (Ex. 1: Pl. pp. 65-68, 175-176, 190-191, 193; Ex. 5: McLean pp. 47-48, 67; Ex. 25: Eidt pp. 71-72, 83, 130-132)

51. Mayor Fouts is not a Defendant in this case, nor is any other administrative or elected official outside the WPD. He has been the most proactive Mayor for the City of Warren in advancing diversity causes and in attempting to create a diverse City Hall workforce. (Ex. 32: Fouts pp. 171-173).

52. While Mayor Fouts, per Charter provision §7.17, appoints the Police Commissioner, he has no involvement with WPD policy. It is undisputed that WPD creates and implements its own policies, or General Orders, which have been enforced and updated at all relevant times without the involvement or knowledge of the City's Administration. (Ex. 9: Green pp. 12-25; Ex. 32: Fouts pp. 48, 50, 52, 60, 61-63, 151, 153; Ex. 33: Charter §s 7.6, 7.17; Ex. 34: Murray pp. 191-198; Ex. 35: Dwyer Aff.; Ex. 36: Simlar Aff.).

53. It is also undisputed that WPD conducts its own training, hiring, firing, and discipline of officers, independent of the City's Administration. (*Ibid*; Ex. 8: Reichling Affidavit ¶ 11-12).

## ARGUMENTS

I. **THE PLAINTIFF'S TITLE VII AND 42 U.S.C. §1983 CLAIMS PRECEDING APRIL 21, 2013 ARE UNTIMELY AS A MATTER OF LAW.**

All of the Plaintiff's claims preceding April 21, 2013 (Doc. 1), are untimely as a matter of law under both 42 U.S.C. §1983 and Title VII, 42 U.S.C. §2000e, *et. seq.* because those alleged actions occurred between ten (10) and twelve (12) years ago.

An EEOC charge must be filed "within 300 days after the alleged unlawful employment practice occurred, 42 U.S.C. §2000e-(5)(e)(1), and the Courts recognize that the filing of a timely charge with the EEOC is a prerequisite to a Title VII action." *Sterman v. Optical Imaging Systems, Inc.*, 843 F.Supp. 1168 (E.D. Mich. 1994); *Block v. Meharry Medical College*, 723 Fed. Appx. 273 (6th Cir. 2018) (attached as Ex. 40). Plaintiff's alleged discrimination charges prior to April of 2013 are outside of

the 300 day time period (alleged events from 2000-2013). Therefore, all Title VII claims arising from such allegations must be dismissed as time barred.

In reference to the Plaintiff's §1983 claims, the Sixth Circuit has also held that the statute of limitations on a §1983 claim must be established by reference to state law. In Michigan, such a claim must be brought within three years. ***Wolfe v. Perry***, 412 F.3d 704, 714 (6th Cir. 2005). Further, "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." ***Harrison v. Michigan***, 722 F.3d 768, 773 (6th Cir. 2013) cert. denied, __ U.S. __, 134 S.Ct. 1023 (U.S. 2014).

The same rationale for why the Plaintiff's Title VII claims preceding April 13, 2013 are untimely applies with equal force to the Plaintiff's §1983 claims preceding April 2013. The Plaintiff purposefully chose not to bring forth complaints, some of which stem from isolated comments more than a decade old. She received training on how to file complaints. (Ex. 1: Pl. pp. 65-68; Ex. 28 and Ex. 29: General Orders; Ex. 31: Training) The Plaintiff justifies failure to report by arguing fear of retaliation. The Plaintiff's subjective fears of confrontation did not alleviate *her duty* to report the alleged hostile work environment to the Warren Police Department. ***Thornton v. Fed. Express Corp.***, 530 F.3d 451, 457 (6th Cir. 2008). The Plaintiff's admitted failure to report took away the WPD's ability to investigate her claims. The City should not be penalized for Plaintiff's failure to report.

## II. THE PLAINTIFF HAS FAILED TO ESTABLISH CLAIMS OF SEX AND RACE DISCRIMINATION/HARASSMENT IN VIOLATION OF TITLE VII AND 42 U.S.C. §1983.

In ***Gutzweller v. Frank***, 860 F.2d 1317, 1325 (6th Cir. 1988), the Sixth Circuit established that a plaintiff asserting Fourteenth Amendment equal protection claims under 42 U.S.C. §1983 must prove the same elements required to establish a disparate treatment claim under Title VII of the Civil Rights Act of 1964. Claims under both Title VII and §1983 must be established through either direct or indirect evidence. Plaintiff provides neither and therefore cannot succeed on her claims.

### A. THE CITY OF WARREN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF SEX HARASSMENT UNDER TITLE VII AND §1983.

Plaintiff alleges that she was subject to a hostile work environment by her co-workers. The Plaintiff brings sexual harassment claims against co-workers Roland Bell, Paul Kelly, Dale Malesh and Shawn Johnson (who was disciplined, Ex. 10). The Plaintiff's allegations of harassment concern a crude comment made by Johnson and a couple of stray remarks, made in a joking, non-sexual manner. The Sixth Circuit is clear that Title VII individual employee/supervisor liability will not be imposed on employees for alleged violations of the Act. ***Whathen v. General Electric Co.***, 115 F.3d 400 (6th Cir. 1997).[3]

To bring a successful sexual harassment claim based upon hostile environment,

---

[3] This same legal argument holds true for the Plaintiff's claims asserting race discrimination/harassment against individual officers, employees/supervisors.

a plaintiff must show: (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability. ***Clark v. United Parcel Service, Inc.***, 400 F.3d 341, 347 (6th Cir. 2005). The Plaintiff does not meet this threshold standard for several reasons.

First, the Plaintiff has not proven that she was subject to unwelcome harassment by co-workers (element #2). As this Court knows, the gravamen of any sexual harassment claim is that the conduct complained of must be unwelcome. ***Meritor Savs Bank, FSB v. Vinson***, 477 U.S. 57, 68 (1986). Plaintiff has admitted that she frequently joked with Bell, that she believes Bell is a "good guy." A solitary, alleged crude comment, (denied in full by Bell, ¶ 33 herein), if made, was not unwelcome.

Additionally, the Plaintiff has not shown that the conduct, of which she complains, is based on sex (element #3). Plaintiff presumed that Officer Paul Kelly asked her out to pursue a sexual relationship with her, but she also admitted the invitation was in the context of socializing with other employees. (Ex. 1: Pl. p. 162) Further, Malesh, who no longer worked for the police department, platonically suggested lunch. (Ex. 1: Pl. p. 160, 164)

Moreover, Plaintiff has not shown that any alleged sexual harassment conduct created a hostile work environment (4th element delineated in ***Clark, supra***). The fourth element of a hostile environment claim requires that the plaintiff prove that the claimed

harassment was sufficiently "severe or pervasive".  The four (4) factors to measure

objective hostility are: (1) the frequency of the discriminatory conduct; (2) its severity;

(3) whether its physically threatening or humiliating, or a mere offensive utterance; and

(4) whether it reasonably interferes with an employee's work performance.  ***Harris v.***

***Forklift Systems, Inc.***, 570 U.S. 17, 23 (1993). Conduct that is not severe or pervasive

enough to create an objectively hostile or abusive environment is beyond Title VII's

purview. ***Id.***

Admittedly, in July of 2015 (Ex. 10), Johnson was disciplined, among other

things, for a sexually crude comment he made to the Plaintiff. This boorish comment,

however, does not rise to the required threshold of creating an objectively hostile work

environment.  Indeed, many decisions throughout the circuits and the Sixth Circuit as

well, have rejected sexual harassment claims based on conduct far more serious than

the conduct at issue here.  See e.g. ***Smart v. City of Miami Beach, Florida***, 933 F.

Supp. 2d 136 (S.D. Fla. 2013) (holding that instances of harassment against a female

firefighter including having her bathing suit stolen from her locker and allegedly

returned with semen on it and having a co-worker and a Lieutenant refer to the plaintiff

as a cunt were not severe or pervasive enough to constitute hostile work environment

based on gender discrimination);  ***Black v. Zaring Homes, Inc.***, 104 F.3d 822 (6th

Cir.) cert. den., 139 L.Ed.2d 114 (1997) (although plaintiff subjected to offensive and

inappropriate verbal comments and unprofessional conduct, Title VII was "not

designed to purge the workplace of vulgarity," (citations and internal quotations

omitted). Here, the Plaintiff had almost a quarter million interactions (250,000), with coworkers, yet she points out only a handful of comments that bothered her.

Finally, when measuring the hallmark of whether a work environment is objectively hostile, Courts examine employers' remedial measures to determine if the measures put an end to further complaints of harassment by the offending individual. ***Vermett v. Hough***, 627 F.Supp. 587, 607 (W.D. Mich. 1986). The Plaintiff testified in deposition that she was satisfied with the Department's action (Ex. 1: Pl. p. 193).

**B. PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF SEX DISCRIMINATION UNDER TITLE VII AND §1983.**

It is undisputed that the Plaintiff is suing Officer Khan for sex discrimination only (Ex. 1: Pl. p. 84, 96; Statement of Facts ¶13). However, Plaintiff has failed to demonstrate a prima facie case of sex discrimination and all claims of sex discrimination should be summarily dismissed by this Court.

To establish a prima facie case of disparate treatment sex discrimination, the Plaintiff must prove the following four elements (McDonnell-Douglas formula): (1) membership in a protected group; (2) qualification for the position; (3) adverse employment action; (4) a showing that similarly situated persons were treated differently than the Plaintiff. ***Shah v. General Electric Co.***, 816 F.2d 264 (6th Cir. 1987); ***Grosjean v. First Energy Corp.***, 349 F.3d 332, 335 (6th Cir. 2003). Plaintiff has failed to establish elements 3 and 4.

The Plaintiff cannot show that she suffered any type of adverse employment action because of illegal considerations of her sex. Although it is true Officer Khan recommended that the Plaintiff be recycled at Step III of the FTO program, significantly, the Plaintiff admitted (Ex. 1: Pl. p. 88) and the record evidence shows that she had great difficulty throughout Step III, her performance was deficient, and she needed training. (Statement of Facts ¶ 13). (Ex. 1: Pl. p. 88). Plaintiff struggled with assigned tasks numerous times including: endangering both the life of herself and Officer Khan by not properly responding to a man brandishing his weapon (Ex. 12: Khan p. 118); and completely failing to process a drunk driving report (Ex. 1: Pl. p. 83). It is undisputed that Plaintiff ultimately became a certified officer. (Ex. 1: Pl. pp. 49-52). The Plaintiff suffered no loss of pay or benefits for the retraining which amounted to a de minimis employment action. The Sixth Circuit has consistently held that de minimis employment actions are not materially adverse, and thus not actionable. ***Bowman v. Shawnee State Univ.***, 220 F.3d 456, 462 (6th Cir. 2000) (quoting ***Jacklyn v. Schering-Plough Healthcare Prod.***, 176 F.3d 821, 930 (6th Cir. 1999)).

As noted, the Plaintiff cannot present a prima facie case that she was treated disparately as compared to similarly situated male employees (element 4 of the prima facie case). Plaintiff alleged that Officer Khan unjustifiably failed her (Doc. 4, ¶13a) and failed women in the FTO program (Ex. 1: Pl. p. 85). However, Khan also failed Caucasian white male officers he supervised in the FTO program (Ex. 13: Twardesky p. 51) who had the same approximate start date as the Plaintiff, entirely gutting her

argument that she has been illegally discriminated against on the basis of sex. The Plaintiff's generalized, unsupported assertions are insufficient to meet the Plaintiff's required evidentiary burden of showing that similarly situated individuals were treated more favorably. ***Noble v. Brinker Intern.***, 391 F.3d 715, 731 (6th Cir. 2004).

Finally, Plaintiff alleged that Khan made a comment that America was better in the 1940's before the "men went off to war and then the women starting working jobs" and that this is direct evidence supporting her assertion that Officer Khan illegally discriminated against her. This does not constitute direct evidence of discrimination. The Sixth Circuit has explained that "direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. ***Jacklyn, Id.***, at 926. Khan's alleged statement simply does not compel the conclusion that Khan's decision to recycle the Plaintiff at FTO/Phase III was motivated by illegal sex based considerations. Considering that there were legitimate and nondiscriminatory reasons to recycle the Plaintiff for performance deficiencies, the Plaintiff has failed to prove her claims of illegal sex based discrimination.

## C.   THE CITY OF WARREN IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIMS OF RACE HARASSMENT UNDER TITLE VII AND §1983.

To establish a prima facie hostile environment case based on race under Title VII, the plaintiff must establish that (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the

harassment had the effect of unreasonably interfering with her work performance by creating a hostile, offensive or intimidating work environment; and (5) employer liability. ***Hafford v. Seidner***, 183 F.3d 506, 512 (6th Cir. 1999).

The Plaintiff worked for the Warren Police Department for eleven (11) years before she walked off the job in January of 2017. Over this eleven (11) year period, the Plaintiff can only point to two (2) stray comments, "sista girl" and a general inquiry regarding the meaning of "blue black," from a criminal investigation in the Detective Bureau. These isolated comments are not "sufficiently or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment". ***Williams v. CSX Transp. Co.***, 643 F.3d 502, 512 (6th Cir. 2011). It is undisputed that the Plaintiff never experienced a reduction in pay, an alteration of job responsibilities or any sort of negative disciplinary action.

As noted in the Material Statement of Facts, the majority of the Plaintiff's complaints for race harassment concern the actions of Shawn Johnson and Barbara Beyer – whom the Plaintiff stipulated to dismiss (with prejudice) as a party Defendant. What is key is that when the Warren Police Department learned of the Plaintiff's complaints, the department pursued charges on Plaintiff's behalf and issued swift and appropriate discipline to both Johnson and Beyer. (Ex. 10; Ex. 11). The actions of Johnson and Beyer were condemnable, and the Warren Police Department recognized this, but they are not actionable as a hostile work environment. See ***Clay v. United Parcel Service, Inc.***, 501 F.3d 695, 707-708 (6th Cir. 2007) (fifteen racially motivated

comments and instances of disparate treatment over a two-year period were isolated, not pervasive and therefore not actionable under Title VII).

Further, the Plaintiff's generalized claim that she heard a co-worker use the "N" word in her presence while working in patrol over five (5) years ago (Doc. 4 ¶13(t)) is completely taken out of context. The Plaintiff testified that in patrol Officer Boons, read the "N" word off of a written statement prepared by a citizen (Ex. 1: Pl. p. 170-171). If true, the use of the "N" word is never appropriate. This isolated use of the word, however, does not, as a matter of law, constitute a hostile work environment.

As a matter of law, when viewing the evidence in a light most favorable to the Plaintiff and under a totality of the circumstances, Plaintiff's allegations of race and sex harassment do not establish a sufficiently severe or pervasive hostile work environment.

**D.    PLAINTIFF HAS FAILED TO PRESENT A PRIMA FACIE CASE OF RACE DISCRIMINATION UNDER TITLE VII AND §1983.**

The prima facie elements for a claim of disparate treatment for race discrimination are spelled out in section II.B. herein. Plaintiff has not established element (3) an adverse employment action because of her race; and (4) that similarly situated Caucasian employees were treated better than her. Her sole allegations for this claim are (a) that she was denied light duty for an off-duty injury and (b) Sgt. Johnston allowed white officers and not her to use a color copier in his office. Plaintiff makes only generalized claims here with no evidentiary support which are insufficient as a matter of law. ***Arendale v. City of Memphis***, 519 F.3d 587, 601 (6th Cir. 2008).

Further, she has failed to make the required showing that white employees with whom she seeks to compare herself are similar in "all of the relevant aspects." ***Leadbetter v. Gilley***, 385 F.3d 683, 691 (6th Cir. 2005). The objective evidence shows that the WPD does not have a written policy regarding light duty assignments. (Statement of Facts ¶30). The WPD practice, however, is to allow, assuming availability, light duty work for those officers who have sustained "on duty" work injuries. *Id.* Plaintiff's claim, without knowing who her supervisors were at the time of her off duty accident, and without any evidence of whether light duty work was available, or who her co-worker's supervisors were, is a conclusory accusation without any supporting evidence. *Id.* Further, the Plaintiff has no objective evidence that Sgt. Johnston was illegally discriminating against her in the use of the copying machine. Plaintiff, who worked in a separate unit, did not even know that Sgt. Johnston, due to the confidential nature of his work, could limit who came into his office. (Ex. 1: Pl. p. 157)

Last, the Plaintiff has not made any showing that she suffered an adverse employment action because of her race. The Plaintiff had a successful career trajectory within the department (Statement of Facts ¶10) where, when comparing years of service, the Plaintiff progressed more rapidly to the Corporal position than 19 other white male officers and one female white officer with more years of service.

## III. THE PLAINTIFF HAS FAILED TO SET FORTH A PLAUSIBLE §1983 FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM.

Plaintiff argues that the Defendants failed to protect her in violation of her

substantive due process rights. The Fourteenth Amendment's guarantee of substantive due process serves as a check on official misconduct which infringes on a "fundamental right" or as a limitation on official misconduct, which although not infringing on a fundamental right, is literally "conscience shocking" hence oppressive, as to rise to a level of substantive due process violation. *Howard v. Grinage*, 82 F.3d 1343, 1349-1350 (6th Cir. 1996). The Sixth Circuit has consistently declined to apply the substantive due process "shock the conscience" standard to government conduct that does not involve the use of physical force, given the inherently subjective nature of the "shock the conscience" standard. *Waters v. Drake*, 105 F.Supp.3d 780, 799-802 (S.D. Ohio E.D. 2015). Nonetheless, if this Court is inclined to analyze the Plaintiff's claims under this theory, the record is clear that the Plaintiff has completely failed to support her "failure to protect" claim with any plausible, admissible evidence showing that her coworkers were reckless, grossly negligent, or deliberately indifferent to her protection in the field. Neither dispatcher Broach nor Plaintiff's partners (Chisholm and Scott) support her claim. This outrageous allegation, with no support, must be dismissed.

## IV. NO 42 U.S.C. §1983 *MONELL* LIABILITY EXISTS AGAINST THE CITY OF WARREN.

Plaintiff alleges in Count IV *Monell* liability against the City for failure to train regarding alleged "racist and sexist actions by its officers"; failure to address complaints with proper discipline and refusing to provide police backup. Plaintiff has not met the elements to establish such a cause of action. A plaintiff who seeks to hold a

governmental entity liability under 42 U.S.C. §1983 must (1) *identify* the municipal policy or custom; (2) connect the policy to the municipality; and (3) show that her injury was incurred due to the execution of that policy. ***Vereecke v. Huron Valley School Dist.***, 609 F.3d 392, 403 (6th Cir. 2010).

Here the Plaintiff has failed to identify any constitutionally defective policy. The General Orders and Policies of the Police Department flatly prohibit any type of harassment and/or discrimination. (Ex. 27; Ex. 28; Ex. 29; Ex. 30; Ex. 39). Plaintiff also failed to establish element two in that she has failed to plead any fact to support a finding that the execution of any alleged policy of the City was the "moving force" behind violations of the Plaintiff's federal rights. Her mere assertion, without factual support is not sufficient to place a questionable claim before this Court. ***Arendale, Id.*** at 605; ***Ackerman v. Diamond Shamrock Corp.***, 670 F.2d 66, 70 (6th Cir. 1982).

The Plaintiff has no evidence that she was not properly backed up on runs. Each witness the Plaintiff identified as supportive of her claim *categorically deny* that the Plaintiff was put in any type of danger and not adequately backed up on police runs. (Statement of Facts ¶s21, 38, 39, 40, 41, 43; Ex. 37: Broach Affidavit). Further, the Plaintiff admitted that she never filed any complaints regarding lack of backup or discriminatory treatment. (Ex. 1: Pl. p. 253). It is undisputed that the WPD pursued investigations against both Officer Johnson and Ms. Beyer. In sum, the Plaintiff has supplied *no facts* that the City tacitly approved of unconstitutional conduct by a failure to act. ***Powers v. Hamilton County Pub. Defender***, 501 F.3d 592, 607 (6th Cir. 2007).

Last, the Plaintiff cannot establish the required third element of causation. "Municipal liability must rest on a direct causal connection between the policy or customs of the governmental entity and the constitutional injury to the plaintiff." It is not enough for a §1983 plaintiff to merely identify conduct attributable to the municipality, and a "respondeat superior" theory for the actions of employees is not applicable. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978). The plaintiff must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury, that the City "itself is the wrongdoer." *Vereecke, supra* at 403-4. The Plaintiff has not done so.

## V. PLAINTIFF'S COMPLAINTS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES ARE BARRED BY QUALIFIED IMMUNITY.

### A. (RETIRED) COMMISSIONER JERE GREEN IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Resolution of the issue of qualified immunity is clearly a question of law for the Courts. *Id*. Qualified immunity, when applicable, precludes suit entirely. *Mitchell v. Forstyh*, 472 U.S. 511, 526 (1985). To decide whether a governmental official is entitled to qualified immunity a court must determine whether (1) plaintiff has shown the

official violated a constitutional right, and (2) if so, the constitutional right was "clearly established" when he or she did so. ***Saucier v. Katz***, 533 U.S. 194, 201; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001).

Defendant Green is entitled to qualified immunity. Plaintiff's sole allegation against him is that he encouraged and failed to correct illegal sexual and racial discrimination within the department. (Doc. 4 ¶21, 14) It is undisputed that throughout her eleven (11) year career the Plaintiff brought only *two* complaints to management's attention. (Ex. 1: Pl. p. 76) For the other matters that came to police management's attention (Shawn Johnson and Beyer), the department moved forward, investigated and disciplined the Plaintiff's co-workers even though the Plaintiff did not wish to proceed. (Ex. 1: Pl. pp. 190-192) It is undisputed that after the WPD disciplined Johnson, the harassment by Johnson ceased.

Plaintiff has clearly failed to demonstrate that Green violated her constitutional rights. Green only tried to help the Plaintiff succeed (Ex. 9: Green p. 169). Plaintiff never brought any complaints to Green's attention. (Ex. 1: Pl. p. 76; Ex. 9: Green pp. 187-188). Her assertion that Green violated her constitutional rights is contravened by the myriad facts on the record that show he only tried to help Plaintiff succeed.

## B.    LT. GARNER IS ENTITLED TO QUALIFIED IMMUNITY.

Whether an official protected by qualified immunity may be held liable for an allegedly unlawful action turns on the "objective legal reasonableness" of the action in light of rights that were "clearly established" at the time the action was taken. ***Anderson***

*v. Creighton*, 483 US 635 (1987). This immunity sweeps broadly, affording officers ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Scott v. Clay County*, 205 F3d 867, 874 (6th Cir., 2000).

Here, Plaintiff alleged that Garner allowed racial and gender hostility to continue when she was moved back to criminal investigations. (Doc. 4 ¶18) However, the move occurred 19 months after the Johnson investigation and discipline, and at a time when the Dispatch Center was being renovated, limiting Bureau desk space. (Ex. 1: Pl. p. 194; Ex. 21: Garner pp. 16, 57). Further, Garner believed the move was beneficial for all detectives to work as a team in the same office, and to share information and resources. (Ex. 21: Garner pp. 102-104). Plaintiff said she had *no problem* with the move and chose an open desk closer to Johnson. (Ex. 21: Garner pp. 26-36, 108; Ex. 1: Pl. pp. 210-211). While she now claims that she that she said she was not comfortable with the move, (Ex. 1: Pl. p. 211), the standard is the objective legal reasonableness of the action.

Plaintiff failed to demonstrate that Garner violated a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. at 201. He did not even attempt to move the Plaintiff to criminal investigations (19 months after the Johnson incident) without Plaintiff's consent. (Ex. 21: Garner p. 18).

## C.    DAWN McLEAN IS ENTITLED TO QUALIFIED IMMUNITY.

The Plaintiff testified that she included Dispatcher McLean as a party Defendant because she made a "hostile environment" claim against her approximately five (5) years

ago in 2013 (Ex. 1: Pl. p. 76, Ex. 18: complaint) for allegedly failing to describe a suspect. Plaintiff testified that she *had no reason to believe* McLean failed to describe the suspect due to illegal considerations of race or sex and that she simply had a personality conflict with McLean. (Ex. 1: Pl. p. 78). Because no constitutional claims have been pled against McLean, she is entitled to qualified immunity.

### D. DEFENDANTS TAYLOR, ROSS, LABAN, HOUTOS, BARNHILL AND KHAN ARE ENTITLED TO QUALIFIED IMMUNITY.

Without waiving any defenses, each of these Defendants is entitled to qualified immunity. Defendants Taylor and Ross, with whom the Plaintiff admittedly has a good relationship with, both passed the Plaintiff in the FTO program over 12 years ago showing that they have not constitutionally injured the Plaintiff. For Defendants Laban (one hearsay statement) and Barnhill ("sista girl"), these alleged incidents occurred over 5 years ago and are untimely. Additionally, the comments, if made, are extremely isolated and do not rise to the violation of a constitutional right. Detective Houtos ("blue black" comment) should be dismissed as a party Defendant. He was merely asking for help on how to complete a case investigation where a witness described the suspect as "blue black". (Ex. 38: Houtos p. 27-29) Finally, the evidence is uncontroverted that Khan failed men at the same time in the FTO program (Ex. 13: Twardesky p. 51). Because the Plaintiff admitted that she was having severe performance problems in Phase III of the FTO program, her claims for constitutional violations against Khan have no merit.

## VI.  PLAINTIFF'S 42 U.S.C. §1981 CLAIMS IN COUNT VI FAIL AS A MATTER OF LAW AND MUST BE DISMISED.

Plaintiff alleges in Count VI of the First Amended Complaint (Doc. 4), that she has "sustained a violation of her right to make and enforce contracts" in violation of 42 U.S.C. §1981.  The law is clear that there is no private cause of action against governmental actors in their individual or official capacity under 42 U.S.C. §1981. *McCormick v. Miami University*, 693 F.3d 654, 659-660 (6th Cir. 2012). Rather, "the express cause of action for damages created by §1983 constitutes the exclusive remedy for violation of the rights guaranteed by §1981 by state governmental units." *Arendale,* 519 F.3d at 598-99. Thus, no independent cause of action against municipalities exists under 42 U.S.C. §1981.

Count VI also contains a claim against the City, a state governmental unit. As noted in *Arendale, Id.*, §1983 is the exclusive remedy for the alleged violations of §1981 rights by state governmental units. Plaintiff's §1981 claims against the City and all of the individually named Defendants fail as a matter of law.

## VII.  PLAINTIFF'S 42 U.S.C. §1985 CLAIMS IN COUNT V FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

In Count V of the Plaintiff's First Amended Complaint (Doc. 4), the Plaintiff broadly alleges Defendants violated her rights guaranteed under 42 U.S.C. §1985.[4]

---

[4] Although §1985 has three (3) subsections, Plaintiff has not identified which subsection applies here.  Because it is obvious §1985(1) and (2) are inapplicable here, this claim must be analyzed under section (3).

Section 1985(3) imposes civil liability upon the participants in a conspiracy intended to deprive "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3). To state a claim under §1985(3), a plaintiff *must* allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person or property or deprived of any right or privilege of a citizen of the United States." **Vakilian v. Shaw**, 335 F.3d 509, 518 (6th Cir. 2003). To state a conspiracy claim under §1985(3), a plaintiff must prove a conspiracy of two or more persons. **Collyer v. Darling**, 98 F.3d 211, 233 (6th Cir. 1996). Additionally, to state a claim under §1985(3), a plaintiff must make *specific factual allegations* showing the existence of a conspiracy with allegations that defendants acted with *specific intent* to deprive a plaintiff equal protection or privileges and immunities; conclusory allegations unsupported by material facts are insufficient to state a claim. **Pahssen v. Merrill County Sch. Dist.**, 668 F.3d 356, 368 (6th Cir. 2012). To support a conspiracy claim, a plaintiff must allege a sufficient factual basis to establish a "meeting of the minds" on the part of the alleged conspirators. **Amadasu v. The Christ Hospital**, 514 F.3d 504, 507 (6th Cir. 2008).

Here, the Plaintiff makes only vague and conclusory allegations that the Defendants agreed to deny her equal protection and due process rights. The Plaintiff has not plead with specificity *any facts* regarding which Defendants had a "meeting of

the minds" to violate her rights. Further, the Plaintiff has not specifically identified how the Defendants conspired to deprive her of her rights and the particulars of any alleged illegal agreement. Despite the nearly 1 million pages of documentation produced discovery, the Plaintiff has not presented one piece of objective evidence that there was a conspiracy not to back her up on police runs due to illegal considerations of her race, nor did she make a single complaint regarding backup during her lengthy tenure as an officer. For these reasons, Count V of the First Amended Complaint must be dismissed with prejudice.

      **WHEREFORE,** Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

By:    /s/ *Ronald G. Acho*
           **RONALD G. ACHO** (P23913)
           **ELIZABETH RAE-O' DONNELL** (P41529)
           **JAMES R. ACHO** (P62175)
           17436 College Parkway
           Livonia, MI 48152
           (734) 261-2400 / FAX (734) 261-4510
           racho@cmda-law.com
Dated: September 20, 2018      erae@cmda-law.com
           jacho@cmda-law.com
           Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record via the Court's e-filing system.

/s/ *Ronald G. Acho*
Cummings, McClorey, Davis & Acho, P.L.C.
17436 College Parkway
Livonia, MI 48152
Phone: (734) 261-2400
Primary E-mail: racho@cmda-law.com
P-23913