# CUMMINGS·McCLOREY
## CMDA
### DAVIS & ACHO, P.L.C.

ATTORNEYS AND COUNSELORS AT LAW

17436 COLLEGE PARKWAY ▪ LIVONIA, MICHIGAN 48152 ▪ PHONE: (734) 261-2400 ▪ FACSIMILE: (734) 261-4510

| | | | | | |
|---|---|---|---|---|---|
| OWEN J. CUMMINGS | ALLAN C. VANDER LAAN | ROBERT J. HAHN | JOHN D. GWYN | KATHLEEN A. STEARNS | OF COUNSEL: |
| GERALD C. DAVIS | HAIDER A. KAZIM | JOEL B. ASHTON | DAVID A. KOWALSKI | JONATHAN D. BROWN | JESSE C. VIVIAN |
| RONALD G. ACHO | PATRICK R. STURDY | GREGORY R. GRANT | STANLEY I. OKOLI | | SAIF R. KASMIKHA |
| ROBERT L. BLAMER | BRIAN T. GOLDSTEIN[3] | BRAEDEN R. WILLOUGHBY | JENNIFER A. RICHARDS | | MICHAEL O. CUMMINGS[4] |
| JEFFREY R. CLARK | JAMES R. ACHO | GREGORY A. ROBERTS | SHANE R. NOLAN | | THOMAS F. MORTIMER, JR.[1] |
| CHRISTOPHER G. SCHULTZ | NORMAN E. RICHARDS | SUZANNE P. BARTOS | BRADLEY C. YANALUNAS | | RAY E. RICHARDS, II |
| TIMOTHY S. FERRAND | RYAN D. MILLER[1] | DOUGLAS J. CURLEW | JOSHUA J. CERVANTES[5] | | MARGARET A. LOURDES |
| SARAH L. OVERTON[1] | JACKLYN PASQUALE PALETTA | LINDA DAVIS FRIEDLAND[2] | JAMES A. HARRIS[1] | | |

*BERNARD P. MCCLOREY, 1934-1995*
*TIMOTHY YOUNG, 1947-2018*

[1] ADMITTED & LOCATED IN CA ONLY
[2] ADMITTED IN MI, WI & VA ONLY
[3] ADMITTED IN MO & KS ONLY
[4] ADMITTED IN NY & NJ ONLY
[5] ADMITTED IN MO ONLY

May 18, 2020

Honorable Terrence G. Berg
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 253
Detroit, MI 48226

*Via Electronic Filing*

**Re:** *Desheila Howlett v. City of Warren et al.*
Eastern District of Michigan Case No. 17-11260-TGB-RSW
<u>Supplemental Authority</u>

Dear Judge Berg:

I provide with this letter a copy of the April 13, 2020 decision of the United States Court of Appeals for the Sixth Circuit in *Hunter v. General Motors LLC.*, 2020 WL 1845871 (6th Cir., April 13, 2020). I provide this as supplemental authority for Defendants' pending *Motion in Limine #5* (Doc. No. 107), particularly on the issue of a Title VII hostile work environment claim.

Very truly yours,

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**

*Ronald G. Acho*

Ronald G. Acho

RGA/jac
Enc.
cc:   Amanda Chubb, Case Manager
      Leonard Mungo, Esq.
      Ethan Vinson, Esq.
      James R. Acho, Esq.

2020 WL 1845871
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals, Sixth Circuit.

Cynthia HUNTER, Plaintiff-Appellant,
v.
GENERAL MOTORS LLC, Defendant-Appellee.

No. 19-1884
|
FILED April 13, 2020

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**Attorneys and Law Firms**

Nanette L. Cortese, Law Office, Dexter, MI, for Plaintiff-Appellant

David B. Ritter, Barnes & Thornburg, Chicago, IL, for Defendant-Appellee

Before: MOORE, McKEAGUE, and READLER, Circuit Judges.

**OPINION**

KAREN NELSON MOORE, Circuit Judge.

**\*1** The district court granted summary judgment on Appellant Cynthia Hunter's discrimination claims. She appeals, arguing that Defendant-Appellee, General Motors LLC ("GM"), engaged in sex discrimination when it discharged her, created a hostile work environment, and retaliated against her. We **AFFIRM**.

**I. BACKGROUND**

Hunter, a black woman, was hired on March 1, 2013 as a Mainframe Technical Specialist at GM's Warren Technical Center in Michigan. R. 25-1 (Hunter Dep. at 36, 39–40) (Page ID #157, 160–61). Samuel Rurka, her supervisor and a white male, began to harass Hunter in 2014. *Id.* at 30, 61 (Page ID #154, 171). For example, he speculated during a team meeting what a child between Hunter and a white male coworker would look like. *Id.* at 62–64 (Page ID #172–74). Rurka also began to report that Hunter had performance issues. *See* R. 25-2 (2014 Performance Review at 2–3) (Page ID #299–300).

On September 24, 2014, Hunter was found

to be partially at fault for a data-loss incident. *See* R. 25-2 (Overview of Mainframe Data Loss at 1) (Page ID #303). Although Hunter explained to her team members that she would address a problem regarding the capacity of the mainframe's tape libraries, R. 25-1 (Hunter Dep. at 116–18) (Page ID #208–10), Rurka ordered that the files be deleted without consulting her, *see* R. 25-3 (Rurka Dep. at 24) (Page ID #394). A disciplinary memorandum was placed in her personnel file. R. 25-2 (Disciplinary Mem. Jan. 5, 2015) (Page ID #305). On September 20, 2015, Hunter and Jorge Diaz were making "change requests," and Diaz failed to follow directions, "caus[ing] some corruption." R. 27-12 (Gurchiek Dep. at 11–12) (Page ID #578). Hunter was disciplined, *see* R. 25-2 (Disciplinary Mem. Oct. 1, 2015) (Page ID #312), but Diaz was not, R. 25-1 (Hunter Dep. at 151) (Page ID #234). Hunter was involved in other incidents in 2015 as well. *See, e.g.*, R. 25-2 (Disciplinary Mem. Oct. 1, 2015) (Page ID #312); R. 25-7 (Rurka Decl. at 4) (Page ID #486).

GM received an anonymous email complaint on September 30, 2015, alleging that Rurka did not treat female employees fairly and made inappropriate comments about women. R. 25-2 (GM Awareline Case Detail Report at 1) (Page ID #313). Hunter and the other female employee on her team were interviewed in response to the complaint. *See* R. 25-2 (GM Global Security Investigation Report at 8) (Page ID #322). They explained that Rurka complimented their male coworkers but not them, treated them disrespectfully, refused to let them work from home, excluded them from meetings, and made inappropriate comments about women. GM concluded that "[t]he allegations of discrimination and harassment are unsubstantiated." *Id.* Afterwards, Hunter complained to HR about Rurka's treatment. R. 25-1 (Hunter Dep. at 155) (Page ID #237).

Hunter was discharged on February 18, 2016, after she made a change request on February 4, 2016, which Rurka asked her to undo. *Id.* at 100, 167, 171–72 (Page ID #197, 245, 249–50). Rurka recommended her discharge. R. 25-7 (Rurka Decl. at 5) (Page ID #487). Hunter filed an "open door" complaint about her termination, but the investigation concluded that her claims of discrimination were unsubstantiated. R. 25-2 (Open Door Appeal Letter) (Page ID #333).

**\*2** Hunter raised race and sex discrimination and hostile work environment claims under Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act of 1976 ("ELCRA") as well as race- and sex-based retaliation claims under ELCRA in state court, and GM removed the case to federal court. R. 1 (Notice of Removal) (Page ID #10–23). GM filed a motion for summary judgment, R. 23 (Mot. for Summary J. at 1–2) (Page ID #108–09), which the district court, through the magistrate judge, granted, R. 33 (Op. & Order Granting Mot. for Summary J. at 1–36) (Page ID #624–59); R. 21 (Notice, Consent, & Reference of a Civil Action to a Magistrate Judge) (Page ID #103). Hunter filed a motion for relief from judgment and/or reconsideration, R. 36 (Mot. for Recons. at 1–27) (Page ID #665–91), which was denied. R. 37 (Op. & Order Den. Mot. for Recons. at 1–12) (Page ID #692–703). This appeal followed.

## II. Standard of Review

When we address a state-law claim, we apply the federal rules of procedure. *See Hanna v. Plumer*, 380 U.S. 460, 473–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). We review de novo a district court's grant of summary judgment and denial of a motion to reconsider that decision. *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 723 n.6 (6th Cir. 2019). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are viewed in the light most favorable to the nonmoving party, and all justifiable inferences are drawn in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS[1]

### A. Discrimination

An employer cannot discharge an employee based on her sex under Title VII or ELCRA. 42 U.S.C. § 2000e-2(a)(1); MICH. COMP. LAWS § 37.2202(1)(a). A plaintiff may demonstrate sex discrimination with direct or indirect evidence. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)). Hunter contends that she has produced both.

Direct evidence is evidence that "requires no inferences or circumstantial evidence to create an inference of discrimination." *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018) (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Hunter points to Rurka's differential treatment of male employees, Appellant Br. at 33–35, but this evidence requires us to draw inferences that the differential treatment reflects a bias against women and that this bias motivated Hunter's discharge. Therefore, Hunter does not provide direct evidence of sex discrimination.

When a plaintiff seeks to demonstrate discrimination through indirect evidence, we utilize the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework. *White*, 429 F.3d at 238. A plaintiff must first establish a prima facie case of discrimination. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014). To establish a prima facie case of sex discrimination, "a plaintiff normally must show that he or she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) suffered such action under circumstances which give rise to an inference of unlawful discrimination." *See Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 364–65

(6th Cir. 2007) (citing cases), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012) (en banc); *see also Birch v. Cuyahoga Cty. Prob. Ct.*, 392 F.3d 151, 166 (6th Cir. 2004). Only the fourth prong is at issue here, and Hunter fails to show a material fact dispute exists.

**\*3** First, Hunter appears to argue that Rurka's discriminatory motive manifested itself in his scapegoating of her for her male coworker's mistakes. *See, e.g.*, Appellant Br. at 14–15. She points to two incidents for which she was disciplined for a male colleague's mistakes: the September 2014 mainframe data-deletion incident and the September 2015 incident involving Diaz. *Id.* at 25. However, she does not specifically identify the mistakes made by her male coworkers during the data-deletion incident for which she alone was blamed. The record shows only that her male team members were present during the team meeting. And although Hunter shows that she was blamed for the later incident, one instance of scapegoating during a three-year tenure does not permit an inference of discrimination.

Second, Hunter relies on a differential-treatment theory. Appellant Br. at 26–31. To succeed, she must show that a similarly situated non-protected person was treated more favorably, *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016), or that the comparator received a different disciplinary outcome when "the plaintiff and his proposed comparator ... engaged in acts of 'comparable seriousness,' " *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). Hunter does neither.

Hunter argues that her male coworkers were not disciplined as she was for the September 2014 or September 2015 incidents, that she was fired despite making fewer mistakes than her male coworkers, and that Rurka called only women "uneducated," "sloppy," or "lazy." Appellant Br. at 29–31. As discussed above, Hunter does not argue that she and her male colleagues engaged in the same conduct during the September 2014 and September 2015 incidents. To support her assertion that she made fewer mistakes than her male coworkers, she points to a coworker's statement that she had the lowest percentage of mistakes. *See id.* at 29–30. However, this datapoint does not indicate whether Hunter's male counterparts were making the same mistakes as she was. Finally, Rurka's comments by themselves do not demonstrate differential treatment. We have held that comments may be so probative "of a decision-maker's discriminatory animus that a plaintiff's failure to satisfy the fourth element of the *McDonnell Douglas* prima facie case is not fatal to her claim," *Birch*, 392 F.3d at 166, but we have never held that mere rude statements are sufficient. Accordingly, Hunter's sex discrimination claim cannot survive summary judgment.

**B. Hostile Work Environment**

Under Title VII and ELCRA, Hunter must establish a prima facie case of a sex-based hostile work environment by demonstrating

that (1) she is a member of a protected class (female), (2) she was subjected to harassment, either through words or actions, based on sex, (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

*Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (quoting *Downey v. Charlevoix Cty. Bd. of Rd. Comm'rs*, 227 Mich.App. 621, 576 N.W.2d 712, 716 (1998)) (ELCRA). As to the third prong, the only prong at issue here, "the conduct must be 'severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive.' " *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)). We consider the totality of the circumstances in assessing objective severity or pervasiveness and look to the following factors for guidance: "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "[O]ffhand comments" and "isolated incidents" do not suffice. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Our precedent presents "a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (noting that in many cases, overtly discriminatory statements and racial slurs did not create a hostile work environment under this standard).

**\*4** Hunter does not meet this high bar. She argues that Rurka treated female employees disrespectfully, did not allow female employees to work from home, blamed Hunter for male employees' mistakes, and excluded female employees from meetings. Appellant Br. at 36. Such conduct is discriminatory, but it is not "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Phillips*, 854 F.3d at 327 (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011)). And while Rurka's comments about what a child between Hunter and a white male coworker might look like are totally inappropriate and offensive, they are not so serious under our precedents that they "alter[ed] the conditions of [her] employment and create[d] an abusive working environment." *Williams*, 643 F.3d at 511.

### C. Retaliation

At the prima-facie stage of an ELCRA retaliation claim, Hunter must establish that (1) she engaged in protected activity; (2) the defendant knew that she did so; (3) "the defendant took an employment action adverse to [her]; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999) (quoting *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)); *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 696 N.W.2d 646, 653 (2005). Hunter's brief on appeal on the retaliation claim consists of two sentences stating that Rurka made the decision to terminate Hunter. Appellant Br.

at 36. As we have held in other cases, such perfunctory argument forfeits the issue on appeal. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

### IV. CONCLUSION

For these reasons, we **AFFIRM** the district court's grant of summary judgment and denial of the motion to reconsider.

### All Citations

--- Fed.Appx. ----, 2020 WL 1845871, 2020 Fair Empl.Prac.Cas. (BNA) 135,665

### Footnotes

1  We apply the following analysis to both the ELCRA claims and the Title VII claims unless otherwise noted. *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012).

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.