**CUMMINGS · McCLOREY**
**CMDA**
**DAVIS & ACHO, P.L.C.**

ATTORNEYS AND COUNSELORS AT LAW
17436 COLLEGE PARKWAY · LIVONIA, MICHIGAN 48152 · PHONE: (734) 261-2400 · FACSIMILE: (734) 261-4510

| | | | | | |
|---|---|---|---|---|---|
| OWEN J. CUMMINGS | SARAH L. OVERTON[1] | RYAN D. MILLER[1] | SUZANNE P. BARTOS | SHANE R. NOLAN | OF COUNSEL: |
| GERALD C. DAVIS | ALLAN C. VANDER LAAN | JACKLYN PASQUALE PALETTA | DOUGLAS J. CURLEW | BRADLEY C. YANALUNAS | JESSE C. VIVIAN |
| RONALD G. ACHO | HAIDER A. KAZIM | ROBERT J. HAHN | LINDA DAVIS FRIEDLAND[2] | JOSHUA J. CERVANTES[5] | SAIF R. KASMIKHA |
| ROBERT L. BLAMER | PATRICK R. STURDY | JOEL B. ASHTON | JOHN D. GWYN | JAMES A. HARRIS[1] | MICHAEL O. CUMMINGS[4] |
| JEFFREY R. CLARK | BRIAN T. GOLDSTEIN[3] | GREGORY R. GRANT | AGENIQUE N. SMILEY | KATHLEEN A. STEARNS | THOMAS F. MORTIMER, JR.[1] |
| CHRISTOPHER G. SCHULTZ | JAMES R. ACHO | BRAEDEN R. WILLOUGHBY | STANLEY I. OKOLI | JONATHAN D. BROWN | RAY E. RICHARDS, II |
| TIMOTHY S. FERRAND | NORMAN E. RICHARDS | GREGORY A. ROBERTS | JENNIFER A. RICHARDS | | MARGARET A. LOURDES |

BERNARD P. MCCLOREY, 1934-1995
TIMOTHY YOUNG, 1947-2018

1 ADMITTED & LOCATED IN CA ONLY
2 ADMITTED IN MI, WI & VA ONLY
3 ADMITTED IN MO & KS ONLY
4 ADMITTED IN NY & NJ ONLY
5 ADMITTED IN MO ONLY

July 22, 2020

Honorable Terrence G. Berg
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 253
Detroit, MI 48226

*Via Electronic Filing*

Re: *Desheila Howlett v. City of Warren et al.*
Eastern District of Michigan Case No. 17-11260-TGB-RSW
<u>Supplemental Authority</u>

Dear Judge Berg:

I provide with this letter a copy of the unpublished July 7, 2020 decision of the United States Court of Appeals for the Sixth Circuit in *Amini v. Rite Aid Corporation*, 2020 WL 3790739 (6th Cir., July 7, 2020). I provide this as supplemental authority for Defendants' pending *Motion in Limine #5* (Doc. No. 107), particularly on the issue of Title VII hostile work environment claims.

Very truly yours,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

Ronald G. Acho

RGA/jac
Enc.
cc: Leonard Mungo, Esq.
Ethan Vinson, Esq.
James R. Acho, Esq.

CLINTON TOWNSHIP, MI · GRAND RAPIDS, MI · LIVONIA, MI · TRAVERSE CITY, MI
KANSAS CITY, MO · NEW YORK, NY · RIVERSIDE, CA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHEILA C. HOWLETT,

    Plaintiff,

v

CITY OF WARREN; LT. LAWRENCE GARDNER; SHAWN JOHNSON; and ANWAR KHAN,

    Defendants.

Case No. 17-11260
Hon. Terrence G. Berg
Mag. R. Steven Whalen

| | |
|---|---|
| THE MUNGO LAW FIRM, PLC<br>By: LEONARD MUNGO (P43562)<br>333 W. Fort Street, Suite 1500<br>(313) 963-0407 / FAX (313) 963-0200<br>Detroit, MI 48226<br>caseaction@mungoatlaw.com<br>Attorneys for Plaintiff | CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.<br>By: **RONALD G. ACHO** (P23913)<br>    **JAMES R. ACHO** (P62175)<br>17436 College Parkway<br>Livonia, MI 48152<br>(734) 261-2400 / FAX (734) 261-2400<br>racho@cmda-law.com<br>jacho@cmda-law.com<br>Attorneys for **Defendants**<br><br>ETHAN VINSON (P26608)<br>City of Warren, City Attorney<br>1 City Square, Suite 400<br>Warren, MI 48093-5390<br>(586) 574-4671 / FAX (586) 574-4530<br>evinson@cityofwarren.org<br>Co-Counsel for Defendants |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record via the Court' s e-filing system.

                              /s/ *Ronald G. Acho*
                              Cummings, McClorey, Davis & Acho, P.L.C.
                              33900 Schoolcraft
                              Livonia, MI 48150
                              Phone: (734) 261-2400
                              Primary E-mail: racho@cmda-law.com
                              P-23913

2020 WL 3790739
Only the Westlaw citation is currently available.
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals, Sixth Circuit.

Rosita AMINI, as Personal Representative of the Estate of Michael Kheibari, Plaintiff-Appellant,
v.
RITE AID CORPORATION, Defendant-Appellee.

No. 19-2097
|
FILED July 07, 2020

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**Attorneys and Law Firms**

Jeffrey Samuel Burg, Law Offices, Bingham Farms, MI, for Plaintiff - Appellant

James Frederick Hermon, Andrea Melissa Frailey, Ryan Jason VanOver, Attorney, Dykema Gossett, Detroit, MI, for Defendant - Appellee

BEFORE: SUTTON, COOK, and MURPHY, Circuit Judges.

Opinion

COOK, Circuit Judge.

*1 The now-deceased Michael Kheibari sued his former employer, bringing various workplace harassment claims. Because Kheibari provides insufficient evidence to support his claims, we affirm the district court's grant of summary judgment.

I.

Born in Iran in 1949, Michael Kheibari became an American citizen in 2003. He began working as an assistant manager with Rite Aid in 2007. From 2007 to 2011, Kheibari interacted with his supervisors, store managers, and other Rite Aid employees without a major incident. But he received mixed performance reviews—some good, some bad.

Tragedy struck Kheibari and his family in October 2011 when his daughter committed suicide. The death understandably affected him, prompting his seeking treatment for depression, anxiety, and insomnia from his primary care physician and a psychologist, who prescribed antidepressants.

The difficulty in his personal life coincided with a change of manager at work. According to Kheibari (only), his new

district manager, Daniel Snyder, allegedly treated him disparagingly. Rite Aid disputes Kheibari's story. But at this stage, we view the record in his favor.

The alleged conduct took different forms. Sometimes, it included harsh age-based comments. On several occasions, Snyder called Kheibari "too old," suggested he "go home," and criticized his abilities due to his age. Other times, Snyder disparaged his Middle Eastern origin by questioning where he is from, remarking on his accent, and joking about it on a conference call with other managers. Kheibari also recounted that Snyder entered the store on several occasions, shaking everyone else's hand but ignoring him. Finally, Kheibari perceived harassment in his performance reviews and thus his promotability. After Snyder entered the picture, Kheibari's immediate supervisor, Beth Spirko, became less friendly and downgraded his performance. This, according to Kheibari, resulted from her boss Snyder's negative influence. And when Kheibari appeared for what he thought was a promotion interview, district manager Snyder responded skeptically, telling him that he is too old, his accent is a problem, and he should "go home."

Kheibari responded in a few ways. First, he arranged to meet a different supervisor at a McDonald's to complain about Snyder's behavior. He also telephoned Snyder, asking him to forget his hard feelings, offering to be his "right hand." Finally, Kheibari emailed Rite Aid's CEO and President, among others, claiming that Snyder violated state and federal law and that he did not feel safe.

Then Kheibari's situation took an unfavorable turn. He attempted suicide in the Rite Aid break room, allegedly leaving notes that the workplace conditions caused this attempt. He was hospitalized and then took medical leave. After another suicide attempt and some months of continuous leave, Rite Aid terminated him for failure to return to work, noting his eligibility for rehire. Kheibari soon thereafter filed this EEOC charge and suit. When he later died during the pendency of this action, Rosita Amini, his daughter and representative of his estate, substituted as plaintiff.

*2 That brings us to this appeal and its claims: (1) age-based harassment under the Age Discrimination in Employment Act (ADEA) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA); (2) national origin-based harassment under Title VII and the ELCRA; and (3) retaliatory harassment under the ELCRA. The district court granted Rite Aid summary judgment on each.

## II.

We review the district court's grant of summary judgment de novo, viewing the entire record in a light most favorable to the party opposing summary judgment and drawing all reasonable factual inferences in that party's favor. *See Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018). An entry of summary judgment stands only if "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Age Harassment

Kheibari asserts that he suffered harassment due to his age in violation of the ADEA and ELCRA. For both, a plaintiff must show that (1) he was 40 or older; (2) he was subjected to harassment based on age; (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996) (ADEA); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (ELCRA).

This case turns on the third element. To be a hostile work environment, conduct must be so severe or pervasive that it rendered the plaintiff's work environment such that a reasonable person would find it abusive or hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *See also Crawford*, 96 F.3d at 835 (acknowledging that "courts routinely employ Title VII and ADEA case law interchangeably"). Our circuit divides this inquiry into two steps: first, determine the relevant facts constituting age-based harassment; second, assess whether that conduct is sufficiently severe or pervasive to create a jury question. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).

### 1. Relevant Facts

Start by separating the wheat from the chaff. A plaintiff must show that his age caused the "harassment." *Crawford*, 96 F.3d at 836. "[O]nly harassment based on the plaintiff's [membership in a protected class] may be considered" in the analysis. *See Williams*, 643 F.3d at 511 (analyzing race-based harassment) (emphasis omitted). This includes direct and comparative evidence of age-based harassment. *See id.*

Here, Kheibari claims age-based harassment from the following: (1) Snyder slighting Kheibari in various ways; (2) a poor performance evaluation; and (3) Snyder calling Kheibari "too old" several times.

First, Kheibari asserts that on several occasions Snyder entered the store but went out of his way to ignore Kheibari. Yet he provides no evidence that Kheibari's age motivated Snyder's conduct. Rude, perhaps. But not discernibly age-related, and thus not supportive of age-based harassment.

Second, Kheibari alleges that Beth Spirko evaluated him poorly after asking his age. To Kheibari, this constituted age-based harassment. Two problems. One: Kheibari himself disavowed this allegation against Spirko under oath. *See* R.117-4 PageID #2836. Two: The district court, at any rate, properly found it unconvincing: "To find age-based harassment under these

circumstances would require a string of tenuous inferences that this Court cannot make." R. 130, PageID #3276. We agree with the district court that Spirko's evaluation "does not constitute harassment under the circumstances." *Id.*

*3 That just leaves Snyder's various comments about Kheibari's age. These statements constitute direct evidence of age-based conduct. But we next consider whether that is enough to support a harassment claim.

### 2. Severe or Pervasive

To be severe and pervasive harassment, conduct must alter the conditions of the plaintiff's employment such that it creates an objectively abusive environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Courts consider the totality of the circumstances to determine whether the cumulative effect of the conduct constitutes a change in employment conditions. *See Williams*, 643 F.3d at 512. That is, the conduct must be extreme. *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275. Otherwise, the ADEA becomes a "general civility code." *See id.* And this standard must be met from both an objective and subjective perspective. *Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 337 (6th Cir. 2012) (citation omitted).

Under this standard, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. This "severe and pervasive" standard filters out complaints merely attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [discriminatory] jokes, and occasional teasing." *Faragher* 524 U.S. at 788, 118 S.Ct. 2275 (citation omitted). Thus, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quotation marks and citation omitted).

Here, the comments about Kheibari's age were neither severe nor pervasive enough to create a triable age-based harassment claim.

*Severity.* Although Kheibari says that Snyder made multiple derogatory comments regarding his age, none were exceptionally severe. Kheibari was not taunted, teased, or ridiculed. Nor was Kheibari physically threatened or humiliated. True, Kheibari may have faced some offensive age-related comments. And sure, a reasonable person might "react strongly." Appellant Br. at 24. But the law requires more. Harsh, rude, or offensive criticism from a supervisor, without more, cannot constitute severe harassment. *See Faragher*, 524 U.S. at 788, 118 S.Ct. 2275; *see also Crawford*, 96 F.3d at 832, 835–36 (holding that the plaintiff failed to establish a prima facie hostile work environment claim despite a supervisor saying "[o]ld people should be seen and not heard," and "women should retire at age 55," while other coworkers allegedly made the lives of older employees "miserable.").

The response? According to Kheibari, the comments were severe because they caused his suicide attempts. Appellant Br. at 24. Yes, suicidal thoughts may tend to show a subjectively severe workplace environment. But countervailing evidence questions whether Snyder's conduct caused that emotional harm. After all, doctors were treating him for insomnia, anxiety, and depression stemming from the grief of his daughter's suicide. And either way, this accounts only for subjective feelings of hostility. It does not alter our conclusion that these comments were objectively non-severe.

*4 *Pervasiveness*. By our count, Kheibari's story includes age-based comments on four or five occasions over the course of nine months. No other evidence supports age-based conduct by Snyder, Spirko, or any other Rite Aid employee. In *Phillips*, we noted that "a handful of offensive comments and an offensive meeting" does not clear the "relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). In short, discrimination must permeate the workplace to prevail on this type of claim. *See Harris*, 510 U.S. at 21, 114 S.Ct. 367. Did that occur? No. A handful of harsh age-based comments hardly makes a work environment hostile under the law.

Kheibari counters—without supporting cases—that derogatory statements occurring "*100% of the time Snyder came into contact with Plaintiff*" should constitute per se pervasive conduct. Appellant Br. at 23. The argument has two serious flaws. First, the facts do not support the assertion. As we explained, not all of Snyder's alleged conduct, even if rude, shows age-based animosity. Second, the argument proves too much. Taken to its extreme, two age-based comments alone would create a triable hostile work environment claim *because* they are the employer's only two comments. This contradicts the analysis our hostile workplace cases require. We look instead to the cumulative effect of the claimed discriminatory conduct. And the conduct Kheibari claims he endured fails to meet the legal standard that an age-based harassment claim requires.

### B. National Origin Harassment

For national origin harassment, Kheibari must show that (1) he belonged to a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on plaintiff's national origin; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an intimidating, hostile, or offensive environment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective action. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (citation omitted) (Title VII); *see also Radtke v. Everett*, 442 Mich. 368, 501 N.W.2d 155, 167 (1993) (requiring an almost identical totality of the circumstances showing under the ELCRA).

We focus on the fourth element, which parallels our analysis for Kheibari's age-based claim. To succeed, conduct must be so severe or pervasive that it rendered his work environment such that a reasonable person would find it abusive or hostile. *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367.

### 1. Relevant Facts

As with the age-based claim, "only harassment based on the plaintiff's [membership in a protected class] may be considered" in the analysis. *See Williams*, 643 F.3d at 511 (emphasis omitted). So we disregard conduct that Kheibari fails to connect to his national origin. That leaves us to consider only Snyder's overtly discriminatory comments. These include two phone conversations, two to three conference calls, a meeting, and a few store visits. Each time, Kheibari claims Snyder asked about his nationality or expressed that he had problems with and disliked his accent and nationality.

### 2. Severe or Pervasive

To prevail, the cumulative conduct must create an objectively abusive environment. *Faragher*, 524 U.S. at 786–88, 118 S.Ct. 2275. We assess the conduct under the totality of the circumstances and consider the "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. Here, Snyder's conduct falls short.

**\*5** *Severity*. Kheibari conceded that he faced no physical threats, instead facing only some offensive comments. And this court holds much more aggressive and bigoted conduct as insufficiently severe. *See, e.g.*, *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x. 421, 432–34 (6th Cir. 2014); *Williams*, 643 F.3d at 513. As above, Kheibari provides insufficient evidence to persuade a reasonable jury that Snyder's conduct was objectively severe.

*Pervasiveness*. Again, the number of incidents cited by Kheibari shows only intermittent conduct by Snyder over nine months. Our court sees worse. In *Clay v. United Parcel Service, Inc.*, the plaintiff alleged fifteen racially motivated comments and instances of disparate treatment over a two-year period. 501 F.3d 695, 707–08 (6th Cir. 2007). Yet we held those acts to be isolated, not pervasive, and thus not actionable under Title VII. *Id*. So too here. Like his age-based claim, the conduct fails our test. And as above, we find unpersuasive Kheibari's argument that Snyder's conduct was per se pervasive.

### C. Retaliation

Kheibari also asserts that Snyder's

harassment constituted retaliation in violation of the ELCRA. The ELCRA prohibits discrimination or retaliation against a person "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws Ann. § 37.2701(a). "Michigan courts use the federal Title VII framework to assess retaliation claims." *Mumm v. Charter Township of Superior*, 727 F. App'x 110, 114 (6th Cir. 2018) (citing *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 696 N.W.2d 646, 653 (2005); *Hazle v. Ford Motor Co.*, 464 Mich. 456, 628 N.W.2d 515, 520–21 (2001)). A plaintiff must show "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Garg*, 696 N.W.2d at 653 (citation omitted).

The second element dooms Kheibari's claim. A retaliatory harassment claim requires knowledge of protected activity. *See Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008); *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007). Kheibari claims that he complained to management about Snyder's behavior on two occasions. But Kheibari provides no evidence that his alleged harasser, Snyder, knew of his complaints. *See Frazier*, 250 F. App'x at 148. And Snyder denied such knowledge.

The closest Kheibari comes is a phone conversation with Snyder. On that call, Kheibari sought to patch things up, offering to be Snyder's "right hand." Kheibari implies that both parties knew this call was about his workplace complaints. Why? Unclear. Kheibari never mentioned his gripes concerning discrimination on the call. Even if *he* thought the call conveyed his workplace complaints, that does not make it so—we don't impute Kheibari's thoughts to Snyder. And because Kheibari provides no support from which a reasonable factfinder could conclude that Snyder knew of his complaints, he cannot show his acts prompted Snyder's harassment.

We AFFIRM.

**All Citations**

--- Fed.Appx. ----, 2020 WL 3790739

---

End of Document © 2020 Thomson Reuters. No claim to original U.S. Government Works.