UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHEILA C. HOWLETT,

    Plaintiff,

vs.

CITY OF WARREN, LT. LAWRENCE
GARDNER, SHAWN JOHNSON and
ANWAR KHAN,

    Defendants.

Case No. 17-11260
Hon.  Terrence G. Berg
Mag. R. Steven Whalen

_____/

MUNGO & MUNGO AT LAW, PLLC
By:  LEONARD MUNGO (P43562)
Attorneys for Plaintiff
31700 Telegraph Rd., Ste. 250
Bingham Farms, MI  48025
(248) 792-7557
caseaction@mungoatlaw.com

ETHAN VINSON (P26608)
City of Warren, City Attorney
Co-Counsel for Defendants
1 City Square, Ste. 400
Warren, MI  48093
(586) 574-4671
evinson@cityofwarren.org

KIRK, HUTH, LANGE & BADALAMENTI, PLC
By: ROBERT S. HUTH, JR. (P42531)
    RAECHEL M. BADALAMENTI (P64361)
    ELIZABETH P. ROBERTS (P76017)
    CHAD L. RIDDLE (P72784)
Attorneys for Defendants
19500 Hall Road, Suite 100
Clinton Township, MI  48038
(586) 412-4900
rhuth@KirkHuthLaw.com
rbadalamenti@KirkHuthLaw.com
eroberts@KirkHuthLaw.com
criddle@KirkHuthLaw.com

_____/

# DEFENDANTS GARNER'S AND KHAN'S
# MOTION FOR COSTS AND FEES

Now Comes Defendants Lawrence Garner and Anwar Khan, by and through their attorneys, and for their Motion for Costs and Fees in this matter, states as follows:

1. Plaintiff filed this case on April 21, 2017, amending the Complaint to assert six claims against 12 Defendants. Following dispositive motion practice, only 3 individual Defendants and the City remained parties on Count I – Title VII against the City, Count II – Sect. 1983 against the individuals, and Count IV – Sect. 1983 *Monell* claim against the City of Warren only.

2. As to Defendant Garner, it was alleged that he could be held individually liable because he denied Plaintiff's right to 14th Amendment Equal Protection under the law when he moved her desk in the Detective Bureau. During Trial it was confirmed that (a) Garner was a Lieutenant at the time of this move; (b) that Commissioner Green ordered the move after consulting with Plaintiff; (c) that Plaintiff, as she admitted during Trial, told Commissioner Green she had no objection; and (d) that Garner had no discretion to effectuate the move given the direct order from Commissioner Green.

3. The jury found no cause for action as to Defendant Garner.

4. As to Defendant Khan, it was alleged that he could be held individually liable cause he denied Plaintiff's right to 14th Amendment Equal Protection under the law when he effectuated a traffic stop of Plaintiff's unmarked

vehicle. During Trial it was confirmed that (a) Khan did not know the Plaintiff was driving the vehicle when he effectuated the stop; (b) Plaintiff, per her own admission, was going 30 mph over the speed limit about ¼ mile from a school zone; (c) Plaintiff was in, per her own admission, an unmarked vehicle with a plate that would have returned "no information found" if run before the stop. In fact, Plaintiff actually agreed under oath that the stop was lawful and proper. She took issue with the fact it was reported to her supervisor though she admitted WPD policy required such reporting.

5. The jury found no cause for action as to Defendant Khan.

6. For the reasons set forth in the attached Brief in Support, Defendants Garner and Khan are entitled to fees and costs as prevailing parties in this matter and brings this Motion pursuant to Fed. R. Civ. P. 54(d)(2), 42 U.S.C. § 2000e-5(k) and 42 USC §1988.

WHEREFORE, Defendants Garner and Khan pray for entry of an award of attorney fees and costs to be determined at an Evidentiary Hearing as to amount, along with such other relief as the Court may deem appropriate.

### BRIEF IN SUPPORT OF DEFENDANTS GARNER'S AND KHAN'S MOTION FOR COSTS AND FEES

Now Comes Defendants Lawrence Garner and Anwar Khan, by and through their attorneys, and for the Brief in Support of their Motion for Costs and Fees in this matter, state as follows:

## I. STATEMENT OF FACTS

For purposes of this Motion, Defendants incorporates its Motion for Partial Judgment as a Matter of Law Under Fed R Civ P 50a at **ECF #172** and its Motion for Summary Judgment on Behalf of Defendants, City of Warren, Green, Garner, Johnson, McLean, Khan, Laban, Ross, Barnhill, Houtos and Taylor at **ECF #66** as though fully restated herein and, further, adopts the same from this Court's Order at **ECF #98**.

## II. GENERAL STANDARDS

Under the American Rule, "parties are ordinarily required to bear their own attorney's fees, "absent explicit statutory authority." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 602–03, (2001). Nevertheless, Congress has provided that a "prevailing party" may be awarded attorney's fees under numerous statutes, including the Civil Rights Act of 1964. Whether fees are awarded is a matter within the Court's discretion. *Id*.

For claims brought under Title VII the Court "in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. §2000e5(k). A prevailing party-defendant is entitled to these fees and costs

when the plaintiff's action was frivolous, unreasonable, or lacking foundation, even though it was not brought in subjective bad faith. *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

Similarly, under 42 U.S.C. §1988, a district court may award attorney fees and costs to a prevailing defendant upon a finding that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir.1994). An award is proper under this rule where "the court finds the claim was groundless at the outset or that the plaintiff continued to litigate after it clearly became so." *Smith v. Smythe–Cramer Co.*, 754 F.2d 180, 183 (6th Cir.). "[I]f a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg Garment Co.,* 434 U.S. at 422. "Awards to prevailing defendants will depend on the factual circumstances of each case." *Smythe–Cramer Co.*, 754 F.2d at 183.

In addition, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct" is subject to an assessment of sanctions under 42 USC § 1927. The award is proper "when an attorney has engaged in some sort of conduct that, from an

objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir.), *cert. denied*, 519 U.S. 935 (1996). "An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits.... Accordingly,...when an attorney knows *or reasonably should know* that a claim pursued is frivolous… a trial court does not err by assessing fees attributable to such actions against the attorney." *Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir. 2000). This rule, by design, imposes a continuing obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of a proceeding. *Advo System, Inc. v. Walters,* 110 F.R.D. 426, 430 (E.D. Mich. 1986). Bad faith is not a required element under §1927. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir.1986).

Also particularly applicable here is *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997) which affirmed an award of sanctions against the attorney under 28 USC §1927 where there was no basis for municipal or police officer liability, as should have been known to the attorney at least by the close of the full discovery period, but the attorney continued pursing the case including opposing summary judgment with mere party-affidavits.

### III.     ARGUMENT

### Officer Anwar Khan

Plaintiff asserted that Officer Khan intentionally discriminated against her on the basis of her sex during an encounter where he allegedly pulled her over for speeding in her unmarked police vehicle and attempted to file a complaint against her. **ECF 98, PgID 10216**.  At Trial, it was clear Plaintiff had no evidence that Officer Khan's actions were improper or done with any discriminatory intent.  The testimony was unequivocal that Plaintiff Howlett was speeding significantly when she was pulled over and that she was in an unmarked detective car with no police insignia or markings at the time Officer Khan stopped her. **ECF #180, PgID 13476-77; ECF #179, PgID 13283, 13295-97, 13306-08.**  Consistently, Officer Khan confirmed he did not know it was Plaintiff until he approached her. **ECF #180, PgID 13476-77.**

A police officer in a marked patrol car, such as Officer Khan's, stopping an unmarked detective car for traffic violations such as speeding or making an improper turn is not out of the norm. **ECF #179, PgID 13283**.  Plaintiff complained at Trial that stopping her was not her complaint in this Trial, but what she asserts is gender discrimination is that she had to explain herself to Officer

Khan once she was stopped and that he reported the speeding incident to her supervisor, Sgt. Eidt. **ECF #183, PgID 14160-61, 14215**.

Only once Officer Khan walked up to the vehicle did he realize that it was Plaintiff, a police detective, driving the vehicle. **ECF #180, PgID 13476-77.** Howlett began to explain herself to Officer Khan – that she was on the way to Fitzgerald High School. **ECF #180, PgID 13476-77; ECF #183, PgID 14160-61, 14215.** In turn, Officer Khan told her to slow down, opted not to write a ticket, and merely reported the speeding to Howlett's supervisor Sgt. Eidt. **ECF #180, PgID 13476-77; ECF #179, PgID 13281-82** (Sgt. Eidt was not sure Ofc. Khan even wanted to make a complaint about it); **ECF #183, PgID 14160-61, 14215.** That was the end of this incident; no complaint arose from it. **ECF #180, PgID 13476-77; ECF #183, PgID 14160-61, 14215.** This was a one-time incident. **ECF #180, PgID 13478.** Howlett never raised the issue with Officer Khan or brought up to him that it was in any way related to her gender. **ECF #180, PgID 13478.** There is zero evidence indicating that Ofc. Khan stopped Plaintiff or reported the speeding incident to her supervisor due to her gender, rather than due to her admitted speeding in an unmarked police vehicle (other than Howlett's speculation of such) and Department Policy. On this, there's simply no evidence to suggest that a reasonable official in Officer Khan's place would have known this conduct to have been unconstitutional and objectively unreasonable in light of the circumstances.

Indeed, Plaintiff acknowledged during her trial testimony that Officer Khan had a duty to report the speeding incident according to WPD Policy. **ECF #183, PgID 14160-61.**

Plaintiff's action against Anwar Khan, a defendant sued in his individual capacity, was frivolous, unreasonable, or without foundation. After conducting discovery, it was clear Plaintiff had no basis for her claims against Defendant Khan. This was confirmed by the jury finding no cause of action against Officer Khan. Accordingly, Officer Khan should be awarded reasonable attorney fees and costs to defend the claims asserted against him.

## Lt. Lawrence Garner

Plaintiff's claims against Defendant Garner, also sued in his individual capacity, were equally unfounded. Plaintiff claims Lt. Garner, new to the Criminal Investigations Department, moved her desk to intentionally discriminate against her, however, Plaintiff acknowledged Lt. Garner had to follow orders and that she told Commissioner Green she was fine with the move. Plaintiff had no evidence whatsoever to establish Lt. Garner acted with any discriminatory intent whatsoever.

Plaintiff readily admits she requested to transfer to the Criminal Investigations Unit from Special Victims Unit, though Corporal Johnson was already part of Criminal Investigations at that time. **ECF #178, PgID 13044**. Lt.

Garner, when he came into the detective bureau as Plaintiff and Corporal Johnson's supervisor, generally knew that there was a past history of a sustained discrimination complaint against Corporal Johnson, and was aware the Howlett was working in Criminal Investigations, but sitting in Special Victims, but did not know why Howlett had been sitting in the Special Victims unit she was not a part of. **ECF # 180, PgID 13354-57, 13369-74**.

Approximately 18 months after Plaintiff's complaint was sustained as to Corporal Johnson and already addressed by others involved with that disciplinary process, Lt. Garner was ordered to move Howlett's desk or physical work space to the Criminal Investigations unit where Corporal Johnson had been working. That was, in part, because there was construction ongoing and nowhere for Plaintiff to sit. **ECF # 180, PgID 13356-57, 13359**. He spoke with Plaintiff and, at Trial, denied that Plaintiff had complained that the discriminatory or offensive conduct by Corporal Johnson was ongoing; Lt. Garner instead testified that Howlett only indicated that the two did not talk anymore. **ECF # 180, PgID 13361-62, 13365**. He also confirmed there was no problem with Corporal Johnson in making this move. **ECF # 180, PgID 13369-74.**

Since he was not involved with the past complaint, as an added precaution, Lt. Garner spoke to HR Mark Simlar and WPD Commissioner Green prior to ordering this move and neither indicated any problem with ordering the move.

**ECF # 180, PgID 13369-74.** Moreover, Plaintiff had already been interacting with the Criminal Investigations Unit detectives and going into their office space prior to the move. **ECF # 180, PgID 13381-82.** Sgt. Edit also saw no problem with the ordering of this move. **ECF #179, PgID 13275-78**.

In fact, Commissioner Green testified that it was actually him who made the decision to move Howlett's desk or physical work space to Criminal Investigations, where Corporal Johnson was working, and that he – being higher in the chain of command – ordered Lt. Garner to order Howlett to move – after Commissioner Green confirmed there was no issue Plaintiff had with this move. **ECF # 181, PgID 13644-46, 13682-83**. Plaintiff admits she did not bring to light any issue with the proposed move when she spoke with WPD Commissioner Green. She told Commissioner Green she was fine with the move. **ECF # 183, PgID 14158-59**. Lt. Garner was not allowed to disregard this chain of command order per WPD Policy. **ECF # 180, PgID 13375; ECF # 183, PgID 14161.**

On the Trial testimony, as set forth above, there was absolutely no evidence to support Plaintiff's claims to find Lt. Garner liable for intentionally discriminating against her on the basis of race or sex. Lt. Garner was not personally involved with any such conduct that would make him liable. Testimony was clear that this order was given on authority and at the direction of WPD Commissioner Green – the then highest in command at WPD – and it would have occurred

regardless of Lt. Garner's involvement in being the person who relayed the order to Plaintiff to move her desk space or physical work space. Further, Plaintiff and Corporal Johnson had already been working without problem together and both represented there was no issue with the move. Moreover, where WPD Policy required Lt. Garner to follow the orders (per chain of command) of WPD Commissioner Green to move Plaintiff's desk, Lt. Garner had a right to rely on WPD Commissioner Green's decision-making in doing so. An objectively reasonable officer in Lt. Garner's position would have and should have been able to rely on their higher command (here, WPD Commissioner Green's) decision-making after discussions he had with Howlett, in which she admits she brought no issue with the move to light to Commissioner Green.

Given the complete lack of evidence presented to support Plaintiff's claims against Lt. Garner, sued in his individual capacity, he is entitled to reasonable attorney fees and costs incurred to defend such baseless claims. Plaintiff's pursuit of these claims, having full knowledge of the facts and history, was frivolous, unreasonable, or without foundation.

For all these reasons, an award of costs and fees to Defendants is appropriate under 42 U.S.C. § 2000e-5(k) and/or 1988.

### IV. **HEARING TO DETERMINE THE TOTAL OF FEES AND COSTS INCURRED AS TO THESE INDIVIDUAL DEFENDANTS ON THE EQUAL PROTECTION CLAIM ONLY**

Once the Court has determined that an award of attorney fees and costs is appropriate, "the next step is to determine what fee is 'reasonable.'" *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). "A starting point is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* "This is known as the 'lodestar' calculation." *Id*. The court should then exclude excessive, redundant, or otherwise unnecessary hours. *Id*. Next, the resulting sum should be adjusted to reflect the "result obtained." *Id*. The Sixth Circuit considers the following twelve-factors when analyzing the reasonableness of a requested fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Reed v. Rhodes*, 179 F.3d 453, 471-2 (6th Cir. 1999).

This case involved the interrelationship of many claims and party-Defendants. Experts were required on both sides.

Given this relatively complex subject matter, a partner/associate blended rate of $350.00 per hour time spent on this matter is reasonable and appropriate. In further support this Court should be aware that each of the attorneys involved in this case on behalf of Defendants (a) are professionals, in good standing with the State Bar of Michigan; (b) are employed by the law firm of Kirk Huth Lange & Badalamenti, PLC which is well-respected in the community in the area of municipal law and insurance defense with over 25 years experience representing municipal bodies across the state of Michigan; (c) the attorneys who were utilized to litigate and ultimately participate in Trial of this case possess the necessary skill and experience in civil litigation with a focus on municipal and constitutional law and application of qualified governmental immunity under 42 USC 1983; (d) the parties engaged in extensive discovery with many disputed issues arising (**See e.g. ECF #28, 33, 35, & 57**; (e) at the outset of the case a preliminary injunction was sought, responded to but ultimately withdrawn; (f) cross-dispositive motions were pursued along with an appeal; and (g) having managed to avoid summary judgment on the narrow timeframe of bad acts limited to three years prior to the filing of the Complaint, Plaintiff went forward to Trial against Garner and Khan knowing that her own admissions would defeat any basis for liability against them.

It is proper for this Court to hold an Evidentiary Hearing to determine the proper award of costs and fees to Defendant Garner and Khan to compensate for

only their piece of the defense of this case, while still necessarily covering the costs and fees incurred for joint filings. Finally, Defendants request the Court first make a determination as to liability for fees and non-taxed costs prior to submission of detailed documentation in support. This request is pursuant to Fed. R. Civ. Proc. 54(d)(2)(C) "The court may decide issues of liability for fees before receiving submissions on the value of services."

## V. CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of an award of attorney fees and costs to be determined at an Evidentiary Hearing along with such other relief as the Court may deem appropriate.

Respectfully submitted,
**KIRK, HUTH, LANGE & BADALAMENTI, PLC**
s/Raechel M. Badalamenti
RAECHEL M. BADALAMENTI (P64361)
Email: rbadalamenti@kirkhuthlaw.com

Dated: June 1, 2023    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on 6/1/2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants in this case.

s/Raechel M. Badalamenti
RAECHEL M. BADALAMENTI (P64361)
rbadalamenti@KirkHuthLaw.com
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900